# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2010

No. 08-50989

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

PASTOR RODRIGUEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, GARZA and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Pastor Rodriguez appeals his conviction for possessing an unregistered sawed-off shotgun with an obliterated serial number, in violation of 18 U.S.C. § 922(k). He contends that the district court erred in denying his motion to suppress the shotgun. For the reasons set forth below, we AFFIRM.

## I

Austin police officers responded to a domestic disturbance 911 call made by Rodriguez's wife, Domitila Perez Cruz. Cruz told the 911 dispatcher that Rodriguez was threatening her and had "whipped" her with a belt, causing injury. The 911 dispatcher asked whether Rodriguez had any weapons, and Cruz stated that there was a gun in the house. Cruz did not tell the operator that anyone was in the trailer other than Rodriguez and herself.

No. 08-50989

Within ten minutes of dispatch, three officers arrived at the trailer park where Rodriguez and Cruz resided. One of the officers knocked at the door, and Cruz gave them permission to enter the trailer. The officers noticed several children were present, as well as Rodriguez. They decided to separate Rodriguez and Cruz to investigate the 911 call.

Two more officers arrived shortly thereafter and immediately inquired whether the firearm had been recovered. When they determined that it had not, one of the officers asked Rodriguez if there were any weapons present. He replied in Spanish that a firearm was "in the back . . . behind him" and pointed toward a bedroom at the end of a long hallway. Two of the officers then went to the bedroom that Rodriguez had indicated and saw the butt of a shotgun on the floor between the bed and the wall. One of the officers removed the gun and took it outside where he determined that it was unloaded. While examining the gun, the officer discovered that it was sawed-off and that the serial number had been obliterated. The officer secured the gun in the locked trunk of his patrol car and returned inside to assist in the completion of the investigation.

Rodriguez was arrested and charged with various firearm offenses because the shotgun was illegal. He filed a motion to suppress, claiming the police lacked consent to enter the trailer and had no basis to perform the protective sweep. The district court denied the motion. Rodriguez was convicted of illegally possessing an unregistered firearm with an obliterated serial number. Rodriguez appeals, challenging only the denial of his motion to suppress.

## II

The standard of review for a "motion to suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law." *United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003) (quotation omitted). Evidence is considered in "the light most favorable to the prevailing party." *United States*

*v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003). The ultimate conclusion about the constitutionality of the law enforcement conduct is reviewed de novo. *Id.* This court "may affirm the district court's ruling on a motion to suppress based on any rationale supported by the record," but "where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

## A

Rodriguez contends that the police were not authorized to perform a protective sweep and that the elements of the "plain view" doctrine which would permit them to seize the shotgun, were not satisfied. Accordingly, he argues that the gun seized during the search should have been suppressed.

"The protective sweep doctrine allows government agents, without a warrant, to conduct a quick and limited search of premises for the safety of the agents and others present at the scene." *United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005). To be constitutionally valid, (1) "the police must not have entered (or remained in) the home illegally and their presence within it must be for a legitimate law enforcement purpose;" (2) "the protective sweep must be supported by a reasonable, articulable suspicion . . . that the area to be swept harbors an individual posing a danger to those on the scene;" (3) "the legitimate protective sweep may not be a full search but may be no more than a cursory inspection of those spaces where a person may be found;" and (4) the protective sweep "may last[] . . . no longer than is necessary to dispel the reasonable suspicion of danger, and . . . no longer than the police are justified in remaining on the premises." *United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004) (en banc) (alterations in original) (citations and internal quotation marks omitted). We consider the "totality of the circumstances surrounding the officers' actions" in determining whether an officer had a reasonable, articulable suspicion

sufficient to justify a protective sweep. *United States v. Maldonado*, 472 F.3d 388, 395 (5th Cir. 2006).

Rodriguez disputes the second prong of the protective sweep doctrine—namely, that the officers had a reasonable, articulable suspicion that a person posing a danger to those on the scene was present in the trailer.[1] Based on the circumstances, the district court found that it was reasonable for the officers to conduct a protective sweep beyond the living room area of the trailer home, even though they had not specifically been told that there were other people in the residence. We agree.

The officers were dispatched to the trailer on a 911 report of a domestic disturbance. The district court credited the officers' testimony that Cruz gave permission to enter the trailer, and Rodriguez does not dispute that the officers were present for the legitimate law enforcement purpose of investigating Cruz's 911 call. One of the officers testified that the first priority in responding to a domestic disturbance report is to secure the scene and create a safe environment in which to investigate the report. Upon entering the trailer the officers saw children. At that point, they knew that Cruz had not told the 911 operator about everyone who was present in the trailer. Indeed, as it turned out, Rodriguez's father was also in the trailer. Moreover, the officers were aware of a previous domestic disturbance call (albeit a year earlier) at the trailer involving Rodriguez and a young man. They might have had a reasonable concern that just as Cruz omitted mention of the children in the trailer, she also may have failed to disclose the presence of others, including even the young man. Further, the officers had been told that a gun was in the house. Thus, the officers

---

[1] Rodriguez also disputes the district court's finding that even without a reasonable suspicion, the officers could perform the protective sweep simply on the basis that they were aware of the alleged presence of a firearm. Because we find that the second prong of the protective sweep doctrine was met here, we need not consider this argument.

reasonably could have suspected that an unaccounted-for person, in the context of a volatile domestic dispute situation, might access the firearm and use it against them or other occupants of the trailer.  These facts and reasonable inferences drawn therefrom could warrant a "'reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the . . . scene.'" *Id.* at 393 (quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990)).

In light of the presence of a firearm at the scene of a domestic altercation, the officers acted reasonably in securing the scene by sweeping the trailer to determine whether other persons were present who might access that firearm. *See, e.g.*, *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) (finding a protective sweep reasonable where police observed a firearm inside the front door of a house and heard noises near the back door of the house indicating that other persons might be present).

**B**

Rodriguez also contends that the seizure of the shotgun was not permissible under the plain-view doctrine because it was not immediately apparent that the shotgun was illegal.  The district court found that the officers "would have been derelict in their duty, having once been informed that there was a weapon on the premises, . . . if they had not taken steps to secure that firearm before they completed their investigation."

While the Fourth Amendment generally prohibits warrantless seizures, *see Buie*, 494 U.S. at 331, the "plain view" exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *Horton v. California*, 496 U.S. 128, 136–37 (1990).

In this case, the only element in question is whether the incriminating nature of the shotgun was "immediately apparent." "The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty." *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005) (internal quotation marks omitted). However, if an officer has only a "reasonable suspicion," then he does not have probable cause. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). "If . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object," then its incriminating nature is not immediately apparent and "the plain-view doctrine cannot justify its seizure." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

The shotgun was illegal because it was sawed off below the legal size limit and its serial number was obliterated. However, neither of these characteristics was immediately apparent to the officers before they removed the shotgun from the trailer. The Government argues that the officers' realization of the shotgun's incriminating nature was "sufficiently contemporaneous" with the seizure. We have found no case that squarely addresses this argument, and we find this argument unpersuasive. It appears that at the time of seizure, the officers did not have probable cause to believe that the shotgun was shorter than legally allowed or that the serial number was obliterated, because the officers could only see the weapon's handle. Further, the officers did not have probable cause to believe that Rodriguez was a felon, which could have made his possession of the firearm illegal. Nor did the officers have any basis to believe that the shotgun was used in the domestic altercation with Cruz such that it would qualify as evidence of a crime. Indeed, the officers acknowledged at the suppression hearing that to determine the shotgun's incriminating nature, they needed to "conduct[] some further search." *Dickerson*, 508 U.S. at 375. They measured the

No. 08-50989

barrel of the shotgun with a ruler and dowel to determine that it was approximately one-and-a-half inches shorter than the legal requirement and only noticed the obliterated serial number when checking it to determine whether the gun was used in any past incidents.

Nonetheless, we think the police were justified in temporarily seizing the shotgun under these circumstances.[2] We reemphasize the situation confronting the officers: they received a 911 call that a violent domestic dispute was underway; they were told that a firearm was present in the household where the dispute was occurring; and, after arriving within minutes of the call, they discovered that other persons were there whose presence had not been disclosed during the 911 call. Although the situation was seemingly calm at their arrival, domestic disputes often involve high emotions and can quickly escalate to violence. Common sense dictates that a firearm that could be accessed by someone at the scene and used against officers or others should be unloaded, and at least temporarily, kept in a safe place.[3] *See, e.g.*, *United States v. Bishop*, 338 F.3d 623, 628–29 (6th Cir. 2003) (holding that temporary seizure of a handgun in plain view was proper where the officer reasonably feared that leaving the gun accessible to a violent person whose whereabouts were not immediately apparent could pose a threat); *United States v. Timpani*, 665 F.2d 1, 5 n.8 (1st Cir. 1981) (noting that seizure of guns and storage in agent's vehicle was reasonable because serious crimes were under investigation and the agents'

[2] We do not hold that any seizure of a weapon whose incriminating nature is not immediately apparent is reasonable. Rather, whereas here, the officers were conducting a legitimate protective sweep for other persons potentially within the trailer, we think that the temporary seizure to secure the weapon was reasonable so as to allow the officers to safely conduct their investigation.

[3] Rodriguez argues that because the shotgun was unloaded, there was no safety reason for the officers to secure it—even temporarily. We find this argument unpersuasive. Further, we note that the officer did not discover that the shotgun was unloaded until after he had removed it from the trailer and had taken it to the trunk of a patrol car to be unloaded and secured under lock and key, as required by department protocol.

No. 08-50989

safety was at stake); *United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979) (holding that the temporary seizure and unloading of a handgun whose incriminating nature was not immediately apparent was a "reasonable precaution to assure . . . safety"). The shotgun was properly seized on a temporary basis to secure it so that the officers could investigate the domestic disturbance call. Once seized for this purpose, the incriminating nature of the weapon became apparent and it was then subject to permanent seizure as contraband.

## IV

For the foregoing reasons, we AFFIRM Rodriguez's conviction for possession of a an unregistered firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).