# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 11, 2010

No. 09-50324

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GLEN LEWIS,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:07-CR-503

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

WIENER, Circuit Judge:[*]

Plaintiff-appellant Glen Lewis appeals his conviction for being a felon in possession of a firearm. Lewis contends, inter alia, that the district court erred in denying his motion to suppress evidence. Agreeing with the government that the officer's warrantless entry into Lewis's residence was justified by exigent circumstances, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-50324

## I. FACTS AND PROCEEDINGS

### A.    Facts

Just before midnight on October 9, 2006, the San Antonio police received both a 911 hangup call and a disturbance call related to the same San Antonio apartment.  Officer James Phelan was sent to investigate the calls.  When Officer Phelan arrived at the apartment, which was on the second floor of the apartment building, he knocked on the door.  Although it was his usual practice to do so, Officer Phelan could not recall whether he had announced himself as a San Antonio police officer when he knocked.  A woman later identified as Darlene Solid answered the door.

While standing outside the apartment at the door, Officer Phelan asked the woman if everything was all right and if there was anyone else present in the residence.  The woman, who appeared calm, said her boyfriend, Glen Lewis ("Lewis"), was in the apartment, at which time Lewis moved into view behind her.  As Lewis was standing behind both her and the door, he was only partly visible to Officer Phelan.

Officer Phelan then asked the woman and Lewis for identification so that he could include their names on his incident report for the 911 calls.  While Officer Phelan was waiting for them to produce identification, he watched through a crack in the door as Lewis extended his arm and dropped a handgun on a chair located behind the door.  Officer Phelan immediately asked Lewis "What's the deal with the gun?"  Lewis flatly denied having a gun, responding "What gun?"  According to Officer Phelan, Lewis's denial caused him to worry about his safety, so he grabbed Lewis by the arm and pulled him out of the apartment to handcuff him for safety reasons.

2

No. 09-50324

Out on the front balcony, the woman interfered with Officer Phelan's attempt to handcuff Lewis by yelling that the gun was hers and that it was not loaded. When the woman then grabbed onto Officer Phelan's arm, he hit the emergency button on his radio to summon backup officers. Officer Phelan eventually handcuffed Lewis and held both him and the woman against the balcony railing while waiting for the backup officers to arrive. Although the record is admittedly unclear on this point, it appears that Officer Phelan conducted a partial pat down of Lewis at this time and discovered three grams of marijuana in his pocket.

After the backup officers arrived within only a few minutes and secured both Lewis and the woman, Officer Phelan entered the apartment and retrieved the firearm, which was loaded. The woman then provided Officer Phelan with some identification, including Lewis's Louisiana prisoner card. After discovering that Lewis had previously been convicted in Louisiana for "simple robbery," a felony, Officer Phelan arrested Lewis for being a felon in possession of a firearm. As Officer Phelan was putting Lewis into the police car, he also discovered on Lewis's person a loaded magazine, which fit the gun that Officer Phelan had recovered from the apartment.

## B.    Proceedings

Several months later, Lewis was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Lewis filed a motion to suppress the gun, the marijuana, and his post-detention statements, contending that (1) there was no probable cause for Officer Phelan to enter the apartment, seize the firearm, and arrest Lewis, and (2) there were no exigent circumstances

3

No. 09-50324

justifying the warrantless search of the apartment. The government opposed the motion.

The district court held a hearing on the motion and Officer Phelan testified for the government. According to Officer Phelan, he had initially handcuffed Lewis because he felt concern for his safety after Lewis lied about the gun. Officer Phelan testified that he had retrieved the gun for safety purposes and that he would have arrested Lewis for the marijuana regardless of his prior felony conviction. The defense did not call any witnesses.

At the close of the hearing, the government contended that Officer Phelan's warrantless search had been justified by exigent circumstances. In support of its argument, the government relied primarily on our holding in *United States v. Jones*.[1] When the district court asked defense counsel if he had any response to the government's argument, counsel responded that he had hoped to call a witness, but that he had failed to procure her appearance so he "[didn't] really have [any response]."

The district court denied Lewis's motion to suppress, concluding that Officer Phelan's warrantless search was justified by exigent circumstances. As the district court explained

> I do find that, given the facts that were testified to by Officer Phelan, I do find that when he saw the gun dropped and when the defendant denied that there was a gun at all, I think it created a problem of officer safety. Officer Phelan took appropriate action to cuff both the defendant and I understand the woman there at the scene and who I understand would have been the witness and in doing that he acted appropriately to secure officer's safety. That gave him exigent circumstances to obtain the gun, that he

---

[1] 239 F.3d 716 (5th Cir. 2001).

No. 09-50324

determined that the defendant had a felony conviction and that gave him probable cause for the arrest. So, I overrule the Motion to Suppress based upon the facts presented by Officer Phelan.

The case then proceeded to trial, at the conclusion of which the jury returned a guilty verdict.

At sentencing, the government argued for an upward departure, contending that Lewis's criminal history was "extensive, lengthy and violent." Defense counsel opposed any upward departure, citing Lewis's compliance with all of Officer Phelan's instructions during the arrest and Lewis's "closed head injury" resulting from a 2003 motorcycle accident, which counsel claimed "explain[ed] a lot of [Lewis's] behavior." When Lewis was given an opportunity to speak, he implied that Officer Phelan had lied on the stand and that he was innocent of the offense of conviction.

The district court sentenced Lewis to 78 months in prison, which was at the high end of the guidelines range. The district court explained that, in its judgment and in light of the factors set forth in 18 U.S.C. § 3553(a), the advisory guidelines range was appropriate. Lewis timely filed an appeal, contending that (1) the warrantless search was unjustified, (2) his sentence is substantively unreasonable, as it is greater than necessary to satisfy the goals of 18 U.S.C. § 3553(a), and (3) the firearm statute, 18 U.S.C. § 922(g)(1), unconstitutionally extends federal power to reach the non-commercial possession of firearms.

## II. LAW AND ANALYSIS

A.    **Whether the district court erred when it denied Lewis's motion to suppress the evidence**

"We review a district court's denial of a motion to suppress by viewing the facts in the light most favorable to the prevailing party (here, the government),

accepting the district court's factual findings unless clearly erroneous, and considering all questions of law *de novo*."[2]   "The presence of exigent circumstances is a finding of fact, which is reviewed for clear error."[3]  "A finding is clearly erroneous only if the court is left with a definite and firm conviction that a mistake has been committed."[4]  "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witness."[5]  The district court's ruling should be upheld "if there is any reasonable view of the evidence to support it."[6]

A warrantless entry into a residence is presumed unreasonable unless the officers obtain consent or the entry is justified by both probable cause and exigent circumstances.[7]  "The possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence."[8]  "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify

---

[2] *United States v. Rico*, 51 F.3d 495, 501 (5th Cir. 1995).

[3] *Jones*, 239 F.3d at 719.

[4] *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010).

[5] *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).

[6] *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999).

[7] *Jones*, 239 F.3d at 719.

[8] *Id.* at 720.

a warrantless entry."[9]  To assess whether an exigency justifies a warrantless search, we have in the past looked to the following non-exhaustive list of factors: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband will be removed; (3) the possibility of danger to the police officers guarding the site while a search warrant is sought; (4) information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.[10]

Lewis contends that Officer Phelan's entry into his apartment to secure the handgun was not justified by either probable cause or exigent circumstances.[11]  In response, the government contends that the warrantless search was justified pursuant to our holding in *United States v. Jones*.[12]  In that case, several officers acting on a drug trafficking tip approached a residence to conduct a knock and talk.[13]  After a man opened the door and began speaking with the officers, one of the officers saw through the window that there was a handgun on the kitchen table within reach of another occupant.[14]  Out of concern

---

[9]  *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997).

[10]  *Id.*

[11]  We note that Lewis does not challenge Officer Phelan's decision to pull him out of the apartment and handcuff him after he denied the presence of the gun.  In Lewis's initial brief, he expressly concedes that "[w]hen [Officer Phelan] saw Lewis drop a gun and heard him deny having a gun, [Officer Phelan] was justified in pulling Lewis out of the apartment and handcuffing him for officer safety."  Therefore, we need not consider this issue on appeal.

[12]  239 F.3d 716, 720 (5th Cir. 2001).

[13]  *Id.*

[14]  *Id.*

for his own safety and that of the other officers, he immediately walked into the residence and secured the handgun.[15]  When it later became clear that the occupant was a convicted felon, the officer arrested him for being a felon in possession of a firearm.[16]  In concluding that exigent circumstances justified the officer's warrantless entry into the apartment, the court in *Jones* explained that "[a] firearm that is located a short distance from an occupant in a residence likely containing illegal narcotics presents an obvious safety risk to law enforcement officers."[17]  Thus, particularly given the "highly deferential standard of review," we held that the district court had not clearly erred in denying the motion to suppress.[18]

Like the officers in *Jones*, Officer Phelan approached a potentially highly volatile situation.  Unlike the officers in that case, however, Officer Phelan was, at least initially, proceeding alone.  Although he did not have any reason to believe that the apartment contained illegal narcotics, he was there to investigate two separate 911 calls — one made from within the apartment and another made from a neighboring apartment.  Shortly thereafter, when Lewis lied to Officer Phelan about having a handgun, Officer Phelan became justifiably concerned for his safety.  And, as we have previously explained, "domestic disputes often involve high emotions and can quickly escalate to violence."[19]

---

[15]  *Id.*

[16]  *Id.*

[17]  *Id.* at 720.

[18]  *Id.*

[19]  *United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010).

Officers responding to reports of such disputes often make it their first priority "to secure the scene and create a safe environment in which to investigate the report."[20] In these situations, "[c]ommon sense dictates that a firearm that could be accessed by someone at the scene and used against officers or others should be unloaded, and at least temporarily, kept in a safe place."[21]

Here, Officer Phelan reasonably began securing the scene by taking both Lewis and his girlfriend outside the apartment and waiting for backup. It is of no moment that Officer Phelan decided, based on his experience, that it would be safer for him to take Lewis and his girlfriend outside the apartment *before* going in to secure the handgun only minutes later. As we have previously explained, "[i]n evaluating exigency, it must be borne in mind that [courts] should consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers."[22] "If reasonable minds may differ, [we will] not second guess the judgment of experienced law enforcement offices concerning the risks of a particular situation."[23] Had Officer Phelan entered the apartment to secure the handgun at the first available moment, he might have subjected both himself and the occupants to considerably greater danger in an already volatile situation. In fact, the situation did escalate quickly after Lewis and his girlfriend were both outside the apartment: Lewis's girlfriend grabbed Officer

---

[20] *Id.*

[21] *Id.*

[22] *Blount*, 123 F.3d at 838.

[23] *Id.* (internal citations and quotation marks omitted).

No. 09-50324

Phelan's arm at about the same time that he discovered marijuana in Lewis's pocket.

Further, we have previously held that officers responding to a similar domestic disturbance report were justified in temporarily seizing a firearm in plain view, even though the officers did not have probable cause to do so at the time of the seizure.[24] In *Rodriguez*, we found persuasive that the officers had arrived at the scene of a domestic disturbance report, had quickly been alerted to the presence of a shotgun in the residence, and had discovered that the 911 caller had not reported the presence of children on the premises.[25] In the instant case, Officer Phelan arrived at the scene of a 911 hangup call that had been corroborated by a separate and independent disturbance call. Officer Phelan knew that Lewis had lied to him about the handgun, and, justifiably concerned for his safety, he could not be certain whether the occupants might also have lied about something else, such as whether there was someone else in the residence. Officer Phelan was therefore justified in temporarily securing the firearm in the interest of officer safety until he could complete his investigation of the domestic disturbance report.[26] Under these particular circumstances, and in light of the

---

[24] *Rodriguez*, 601 F.3d at 408.

[25] *Id.*

[26] A close review of the record raises considerable doubt as to whether Lewis preserved this issue for appeal by raising it before the district court. There, Lewis apparently contended only that Officer Phelan lacked probable cause to arrest him, not to enter the residence and secure the handgun. Regardless of Lewis's status as a felon, Officer Phelan doubtless had probable cause to arrest him based on the marijuana found in his pocket. In any event, the government has failed to address this point, and, for purposes of this appeal, we will assume that the issue of probable cause to enter and seize the gun is properly before us.

highly deferential standard of review, we conclude that the district court did not err in denying Lewis's motion to suppress.

## B.    Whether Lewis's sentence is substantively reasonable

Lewis argues that his within-guidelines sentence of 78 months is substantively unreasonable because it is greater than necessary to satisfy the goals of § 3553(a).  Specifically, he suggests that the circumstances of his case were "less serious than the typical felon-in-possession offense" and that it was entirely reasonable for him to pick up a gun before he opened the door given the lateness of the hour and the possibility that "robbers or some other threat" were waiting outside.    Lewis also contends that his personal history and characteristics as a hurricane evacuee and a person who had suffered a closed head injury demonstrate that his 78-month sentence is substantively unreasonable.    In response, the government urges that Lewis's sentence is presumptively reasonable and that it is supported by his lengthy and violent criminal history.

In determining a sentence, the district court is required to make an individualized assessment of the case based on the facts presented to it after first calculating the advisory guidelines range of imprisonment.[27]  After doing that and hearing arguments from the parties regarding the appropriate sentence, a district court must consider all of the § 3553(a) factors to determine whether they support the requested sentences.[28]  We ultimately review a sentence for reasonableness in light of the 3553(a) factors.[29]

---

[27]  *Gall v. United States*, 552 U.S. 38, 49-51 (2007).

[28]  *Id.* at 49-50.

[29]  *United States v. Mondragon-Santiago*, 564 F.3d 357, 366-67 (5th Cir. 2009).

No. 09-50324

To conduct the reasonableness review, we must engage in a bifurcated analysis, first determining whether the district court committed any significant procedural error with regard to the sentence.[30] Then, if there is no procedural error, we review the substantive reasonableness of the sentence under a deferential abuse-of-discretion standard.[31] If the district court imposes a sentence within a properly calculated guidelines range, we shall apply a presumption of reasonableness to the sentence, inferring that the district court considered the relevant sentencing factors.[32]

Although the parties cite the abuse of discretion standard, we conclude that here plain error review applies.[33] Although defense counsel asked the court to impose a below-guidelines sentence, he did not object when the court imposed its within-guidelines sentence. As Lewis failed to object in the district court to his within-guidelines sentence for the reason he raises on appeal, plain error review applies.[34] To show plain error, Lewis must show a forfeited error that is clear or obvious and that affects his substantial rights.[35]

The record in the instant case reflects that the district court made an individualized sentencing decision. The court correctly calculated the advisory guidelines range, listened to the parties' arguments and Lewis's statement, and

---

[30] *Id.* at 360.

[31] *Id.*

[32] *Rita v. United States*, 551 U.S. 338, 347 (2007).

[33] *See United States v. Vonsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992).

[34] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[35] *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009).

No. 09-50324

considered the § 3553(a) factors.  The district court then specifically recounted Lewis's lengthy criminal history and noted his personal circumstances, including his hurricane evacuation and his closed head injury.  In formulating the sentence, the district court cited the need for the sentence to promote respect for the law, provide just punishment for the offense, and to deter Lewis from engaging in future criminal conduct.  Thus, Lewis has not provided an adequate reason to disturb the sentence selected by the district court.[36]

**C.    Whether 18 U.S.C. § 922(g)(1) unconstitutionally extends federal power to reach the non-commercial possession of firearms**

To preserve the argument for further review, Lewis contends that § 922(g)(1) is unconstitutional under *United States v. Lopez* because it regulates activity that does not have a substantial effect on interstate commerce.[37]  As Lewis concedes, though, his argument is foreclosed by our precedent.[38]

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.

---

[36] *Gall*, 552 U.S. at 51 (explaining that even an appellate court's reasonable conclusion "that a different sentence [would be] appropriate is insufficient to justify reversal of the district court").

[37] 514 U.S. 549 (1995).

[38] *See United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996) (holding that the reasoning in *Lopez* does not render § 922(g)(1) unconstitutional).