FILED
United States Court of Appeals
Tenth Circuit

April 30, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENT MAYFIELD; TONYA
MAYFIELD,

    Plaintiffs - Appellants,

v.

HARVEY COUNTY SHERIFF'S
DEPARTMENT; HARVEY COUNTY
DISTRICT COURT; T. WALTON;
CARMAN CLARK; JIM BETHARDS;
SCOTT MOTES; TODD HANCHETT;
GREG NYE; TIM BOESE,

    Defendants - Appellees.

No. 17-3197
(D.C. No. 6:14-CV-01307-JTM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Kent and Tonya Mayfield appeal the district court's order dismissing their

claims against several members of the Harvey County Sheriff's Department (HCSD)

and the HCSD itself. They also appeal the district court's order denying their motion

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for summary judgment against Jim Bethards and instead granting summary judgment in his favor. We affirm.

## I. Background

One morning in 2014, Harvey County Sheriff's Deputies Jim Bethards and Carman Clark took a report of dogs attacking livestock near Halstead, Kansas. They began searching for the dogs and, less than a mile away, found three dogs matching the description they were given. According to the officers, the dogs were near what appeared to be an abandoned house and were not wearing collars or restrained in any way. Two of the dogs fled as the officers approached, but the third behaved aggressively and threatened to attack, so Bethards shot and killed it. That dog, a three-year-old Malamute/Husky mix named Majka Tikaani, belonged to the Mayfields.

The Mayfields sued Bethards under 42 U.S.C. § 1983 claiming he violated their Fourth Amendment rights. Their complaint also asserted claims against Clark, fellow HCSD members Tim Boese and Todd Hanchett, the HCSD itself, and others. The district court denied Bethards' motion to dismiss on qualified immunity grounds, but it dismissed the Mayfields' claims against the other defendants.

In a prior appeal, we affirmed the denial of Bethards' motion to dismiss. *See Mayfield v. Bethards*, 826 F.3d 1252, 1259 (10th Cir. 2016). We concluded the allegations in the Mayfields' complaint—which did not include the officers' account of the events—were sufficient to support the Mayfields' claim that Bethards violated their clearly established Fourth Amendment rights. *See id*. at 1258-59. We therefore

2

agreed with the district court that Bethards was not entitled to dismissal on qualified immunity grounds. *See id*. at 1259. Back in the district court, Bethards and the Mayfields completed discovery and both moved for summary judgment. The district court denied the Mayfields' motion, but granted summary judgment in favor of Bethards.

In this appeal, the Mayfields argue[1] the district court erred by (1) dismissing their claims against Clark, Boese, Hanchett, and the HCSD[2]; (2) denying their motion for summary judgment against Bethards; and (3) granting summary judgment in favor of Bethards. We affirm the district court's orders.

## II. The district court did not err by dismissing the Mayfields' claims against Clark, Boese, Hanchett, and the HCSD.

We review de novo the district court's order dismissing the Mayfields' claims against Clark, Boese, Hanchett, and the HCSD. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). To survive a motion to dismiss, a complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the facts alleged give rise to "the reasonable inference that the

---

[1] The Mayfields appear pro se, so we liberally construe their briefs and hold their pleadings to a less stringent standard than those drafted by attorneys. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But the Mayfields must follow the same rules of procedure as all litigants; we cannot serve as their "attorney [by] constructing arguments and searching the record." *Id*.

[2] The Mayfields do not appear to challenge the dismissal of their claims against the other defendants named in the complaint.

3

defendant is liable." *Id*. Applying this standard, we see no error in the district court's ruling.

### A. Clark

The district court dismissed the Mayfields' claim against Clark on qualified immunity grounds. "Qualified immunity protects government officials from suit for civil damages if their conduct does not violate clearly established statutory or constitutional rights." *Mayfield*, 826 F.3d at 1255. "When a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *Id*.

In their complaint, the Mayfields claim Clark violated Kent Mayfield's Fourth Amendment rights by temporarily seizing his handgun. The Mayfields allege that, after hearing Majka had been shot, they drove to the scene and found Clark talking to a neighbor. Kent Mayfield, armed with a holstered gun, approached Clark and asked whether he shot Majka. Citing safety concerns, Clark seized the gun and returned it at the end of their encounter.[3]

The district court found the temporary seizure was a reasonable precaution to ensure the safety of the officers and others present. *See United States v. Gordon*, 741 F.3d 64, 71 (10th Cir. 2014) ("Temporary seizures of persons or objects may be permissible when reasonably connected to the safety of officers or the protection of others." (citation omitted)); *see also United States v. Rodriguez*, 601 F.3d 402, 408

---

[3] The gun's magazine was not returned until the next day.

4

(5th Cir. 2010) (concluding "police were justified in temporarily seizing [a] shotgun" when they responded to a domestic violence call, were told there was a gun in the house, and "discovered that other persons were there whose presence had not been disclosed during the 911 call").  It therefore concluded the complaint failed to state a plausible Fourth Amendment claim and Clark was entitled to qualified immunity.

The Mayfields identify no error in the district court's reasoning.  They just argue Clark should be denied qualified immunity because of his participation in "the illegal search and seizure" and an unspecified "cover up."  Opening Br. at 27.  This conclusory argument, without supporting authority, is not enough prevail on appeal.  *See Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1092 (10th Cir. 2006).

### B. Boese and Hanchett

The Mayfields' complaint alleges that several HCSD officers, including Boese and Hanchett, "were aware of [Bethards' and Clark's] criminal acts and did nothing to stop the criminal cover up."  R. at 8.  The complaint also accuses Boese of "attempt[ing] to cover up a crime and slander."  *Id.* at 9.  But "liability under § 1983 must be based on [a] defendant's personal involvement in the alleged constitutional violation."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (alterations and internal quotation marks omitted).  So a complaint must allege that each defendant, through his own actions, violated the constitution.  *Id*.  Because the Mayfields' complaint does not specify what actions Boese and

5

Hanchett took to violate their constitutional rights, we agree with the district court that they failed to state plausible claims against these defendants.

### C. The HCSD

In their complaint, the Mayfields accuse the HCSD of "conspiring to commit [an] illegal cover up." R. at 8. The district court dismissed this claim because it concluded the HCSD lacked the capacity to be sued. As the district court recognized, for parties who are not individuals or corporations, the capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Under Kansas law, "subordinate government agencies do not have the capacity to sue or be sued in the absence of a statute." *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (concluding the Kansas Highway Patrol lacked the capacity to be sued). There is no dispute the HCSD is a subordinate government agency and the Mayfields do not identify a statute giving the HCSD the capacity to sue or be sued. We therefore agree with the district court that the HCSD lacked the capacity to be sued.

### III. The Mayfields were not entitled to summary judgment against Bethards.

The district court denied the Mayfields' motion for summary judgment because it concluded they failed to satisfy the requirements of Fed. R. Civ. P. 56. Reviewing the district court's decision de novo, *see Yaffe Companies, Inc. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007), we agree.

6

A party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). He must support a claim that a fact is not genuinely disputed by "citing to particular parts of materials in the record, including depositions, . . . affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see* D. Kan. R. 56.1(d) ("All facts on which a motion [for summary judgment] or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of the pleadings . . . .").

The Mayfields did not satisfy this standard. By our review, their motion for summary judgment cites no evidence supporting their factual assertions. For example, the Mayfields contend Majka "was not posing any threat to anyone," R. at 33, and "Bethards was not faced with any split-second decisions," *id*. at 32, before shooting her. But the Mayfields cite no evidence supporting these statements. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). Moreover, the Mayfields were not present during the incident and do not explain why their account of the events would be admissible at trial. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("[A] court necessarily may consider only the evidence that would be available to the

7

jury."). In short, the Mayfields failed to meet the requirements of Fed. R. Civ. P. 56 and the district court properly denied their motion for summary judgment.

## VI. The district court did not err by granting Bethards' motion for summary judgment.

The district court found that, based on the uncontroverted facts set forth in Bethards' motion for summary judgment, the Mayfields failed to show he violated their clearly established Fourth Amendment rights by killing Majka.[4] It therefore concluded Bethards was entitled to qualified immunity and granted summary judgment in his favor. We see no error.

"We review de novo the district court's order granting summary judgment . . . on qualified immunity grounds." *Gutteridge v. Okla.*, 878 F.3d 1233, 1238 (10th Cir. 2018). When a defendant raises qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must show (1) the defendant violated his constitutional rights and (2) the rights were clearly established. *Id*. To satisfy the second requirement, the plaintiff must show it would have been "clear to a reasonable officer that his conduct was unlawful in the situation." *Maresca v. Bernalillo Cty.*, 804 F.3d 1301, 1308 (10th Cir. 2015) (internal quotation marks omitted). Only after

---

[4] The district court noted this was the Mayfields' only claim against Bethards because it was the only one identified in the pretrial order. The Mayfields argue Bethards also violated their Fourth Amendment rights by entering the property where the dogs were found. But there is no dispute this claim was omitted from the pretrial order. Because "claims . . . not included in the pretrial order are waived even if they appeared in the complaint," *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002), we agree the Mayfields' only claim against Bethards was that killing Majka was an unreasonable seizure.

8

"the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Gutteridge*, 878 F.3d at 1238 (internal quotation marks omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their . . . effects[] against unreasonable . . . seizures." U.S. Const. amend. IV. It is clearly established that killing a pet dog is a "seizure" of its owner's "effects." *Mayfield*, 826 F.3d at 1256, 1258-59. So to overcome Bethards' qualified immunity defense, the Mayfields had to show the seizure was unreasonable under clearly established law.

Generally speaking, a seizure of personal property is unreasonable unless it is accompanied by a warrant. *United States v. Place*, 462 U.S. 696, 701 (1983). But "because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted); *see Mayfield*, 826 F.3d at 1256 ("[I]t is unlawful to seize a dog absent a warrant or circumstances justifying an exception to the warrant requirement."). And several circuits have recognized that shooting a dog is a reasonable seizure when the dog poses an imminent threat to officer safety and the use of force is unavoidable. *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016); *Robinson v. Pezzat*, 818 F.3d 1, 7 (D.C. Cir. 2016); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008); *see also Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) ("[C]ourts have held that, at least

9

in some circumstances, it is reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community."); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3d Cir. 2001) ("[W]hen there is reason to believe the pet poses an imminent danger . . . the state's interest may even justify the extreme intrusion occasioned by the destruction of the pet in the owner's presence."). So the question is whether Bethards reasonably believed Majka posed an imminent threat and shooting her was unavoidable.

Among the materials supporting Bethards' motion for summary judgment were sworn declarations by himself and Clark. By their accounts, the officers were dispatched to investigate a report of dogs attacking livestock. The livestock owner told them three dogs had killed two of her goats and wounded other goats and sheep. She described the dogs responsible for the attack, R. at 145, 149-50, and told the officers some of "her friends and family were armed and already looking for the dogs," *id*. at 145, 150. Concerned about "an armed confrontation," the officers "sought to immediately capture the dogs." *Id*. As they searched, the officers "noticed neighboring homes with chickens, goats, and horses," which made them concerned the dogs "may attack the other animals in the area." *Id*.

Less than a mile away, near a city park, the officers found three dogs matching the description they were given. The dogs were roaming free near what appeared to be an abandoned house. There were no people on the property and the dogs were not wearing collars or restrained in any way. The officers were concerned the "dogs

10

posed a risk to other people and property," *id*. at 146, 151, so they tried to corral the dogs.

As the officers approached the dogs, two showed no signs of aggression and quickly ran away. The third dog, Majka, had what looked like dried blood on her neck. As the officers walked toward her, Majka "quickly turned and charged" them. *Id*. at 147, 151-52. Fearing she would attack, Bethards fired shots in her direction. Majka ran to the other side of the house and the officers followed, still hoping to corral her. As they approached Majka a second time, the officers saw what appeared to be dried blood around her mouth. Majka "snarled, showed [her] teeth, barked at [the officers] in an aggressive manner, and attacked [them] again." *Id*. at 147, 152. Bethards then shot Majka twice, killing her.

The Mayfields offered no admissible evidence contradicting this account of the shooting. Therefore, the uncontested evidence showed Bethards was tasked with protecting the public from three dangerous dogs. He had reason to believe Majka was one of these dogs when he encountered her unrestrained with her owners nowhere to be found. She behaved aggressively and tried to attack him and Clark. Under the circumstances, a reasonable officer could conclude Majka posed an imminent threat and the use of deadly force was unavoidable. The Mayfields therefore failed to show shooting Majka was unreasonable under clearly established law. Because they did not make the showing required to defeat Bethards' qualified immunity defense, the district court properly granted summary judgment in his favor.

11

The Mayfields argue this conclusion conflicts with our holding in the prior appeal. But the issue then was whether the allegations in the Mayfields' complaint, assuming they were true, could support a claim that Bethards violated their clearly established Fourth Amendment rights. *See Mayfield*, 826 F.3d at 1258-59. We concluded they satisfied this standard, but the Mayfields cannot overcome a motion for summary judgment by resting on the allegations in their complaint, *see Trevizo v. Adams*, 455 F.3d 1155, 1159 (10th Cir. 2006). Indeed we recognized in the prior appeal that "Bethards could present evidence that might succeed at summary judgment or trial." *Mayfield*, 826 F.3d at 1258. That is what he did.

## V. Conclusion

We affirm the district court's order dismissing the Mayfields' claims against Clark, Boese, Hanchett, and the HCSD, as well as its order denying the Mayfields' motion for summary judgment and granting summary judgment in favor of Bethards.

Entered for the Court

Bobby R. Baldock
Circuit Judge

12