United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 26, 2007**

Charles R. Fulbruge III
Clerk

REVISED MARCH 2, 2007

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-31071

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

HENRY MEREDITH,

Defendant-Appellant

----------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
(2:05-CR-00005)
----------------------

Before JONES, Chief Judge, WIENER, and BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

In September 2004, officers of the New Orleans Police Department ("NOPD") lawfully stopped an automobile for operating without tail lights and for improper change of lanes. In addition to the driver, the vehicle was occupied by one front-seat passenger, Defendant-Appellant Henry Meredith. As authorized by Pennsylvania v. Mimms[1] and Maryland v. Wilson,[2] the officers ordered both the driver and Meredith to step out of the

_____

[1] 434 U.S. 106, 111 (1977).

[2] 519 U.S. 408, 415 (1997).

vehicle. The driver did so, but Meredith remained seated. He informed the officers that he was a paraplegic and thus physically unable to exit. In response, one of the officers opened the passenger-side door and conducted a visual inspection of Meredith only. In so doing, the officer noticed a bulge in Meredith's pants that approximated the shape of a handgun. At that point, the officer leaned into the car and patted down the still-seated Meredith. The officer discovered a revolver loaded with six hollow-point cartridges at the location of the bulge. Meredith was arrested and subsequently indicted as a felon in possession of a firearm.

Prior to trial, Meredith moved to suppress the revolver, the ammunition, and a post-arrest statement that he made acknowledging guilt. He contended that this evidence was obtained in derogation of his Fourth Amendment rights. We now logically extend the holdings of Mimms and Wilson and rule that, after ordering an occupant to exit a vehicle and hearing that he claims to be physically unable to do so, an officer may open the occupant's door and conduct a minimally necessary visual inspection of the person of that occupant. Further, if this inspection reveals articulable facts constituting reasonable suspicion that the occupant is armed and dangerous, he may be patted down to the same extent as he could have been if he had

2

complied with the order to exit the vehicle.

## I. FACTS AND PROCEEDINGS

While on "proactive" patrol at approximately 8:30 p.m. on the September night in question, NOPD Sergeant Anthony Micheu observed NOPD Unit 286, occupied by Officers Gabe Swensen and Oscar Ortiz, attempting to stop a vehicle at the intersection of Louisiana Avenue and Danneel Street. Officer Micheu parked his patrol car on the left side of the stopped vehicle and observed Meredith in the front passenger seat of that car, "moving around from within the passenger compartment of the vehicle." Meredith became "very nervous" when Officer Micheu approached the stopped vehicle from the front.

At this time, Officer Swensen told Officer Micheu that the vehicle had been stopped because it was operating without tail lights and was improperly changing lanes. Officer Micheu instructed Officers Swensen and Ortiz to order the driver and Meredith to get out of the vehicle for the officers' safety. The driver complied, but Meredith told the officers that he was a paraplegic, implying that he was physically unable to comply with the exit order on his own. Meredith added that his paraplegia resulted from a gun shot wound to the back.

While Officer Swensen was patting down the driver at the rear of the vehicle, Officer Micheu opened the passenger-side

3

door and immediately observed a bulge shaped like a handgun in the left rear side of Meredith's pants. Officer Micheu then reached inside the vehicle and patted down Meredith. The officer recognized what he felt as a handgun and removed a fully loaded .357 caliber revolver from Meredith's pants.

After seizing the firearm, the officers conducted a background check on Meredith and discovered that he was a convicted felon and thus was unlawfully possessing the revolver. Officer Micheu informed Meredith that he was under arrest and advised him of his Miranda rights. Meredith told Officer Micheu that he knew he was going to jail; that having been shot once before, he carried the gun for protection.

The following January, a grand jury indicted Meredith on a single count of being a felon in possession of a firearm.[3] In April, Meredith filed a motion to suppress the revolver, the ammunition, and his post-arrest statement, insisting all had been obtained in violation of his Fourth Amendment rights. Specifically, Meredith contended that at the time Officer Micheu opened the passenger-side door, he lacked reasonable suspicion to believe that Meredith possessed a weapon or posed any danger to the officers. Meredith argued that, absent reasonable suspicion,

---

[3] See 18 U.S.C. § 922(g)(1), 924(a)(2).

4

Officer Micheu's search was unconstitutional and its fruits thus inadmissible in evidence.

In July 2005, without the benefit of an evidentiary hearing (none having been requested by Meredith), the district court denied Meredith's motion to suppress. The court ruled that under the totality of the circumstances — the time of night and dangerous location of the stop, Meredith's movement and nervousness, and the nature of the offense for which the vehicle was stopped — Officer Micheu had reasonable suspicion to believe that Meredith was armed and posed a threat to the officers' safety. A week after the district court's ruling, Meredith pleaded guilty without a plea agreement but reserved his right to appeal the denial of his suppression motion.

The district court sentenced Meredith to 33 months imprisonment to be followed by three years supervised release. Meredith timely filed a notice of appeal.

## II. LAW AND ANALYSIS

A.  Standard of Review

Determinations of reasonable suspicion are reviewed de novo; however, findings of fact are reviewed for clear error, and deference is given to inferences drawn from those facts by both

the trial court and the involved law enforcement officers.[4]  We may affirm a district court's decision on any basis established by the record.[5]

B.    Substantive Law

The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[6]  Essentially, it is designed to impose a standard of reasonableness on law enforcement agents and other governmental officials to prevent arbitrary invasions of a person's privacy and security.[7]

Under Fourth Amendment jurisprudence existing at the time of this incident and as conceded by defense counsel at oral argument, a law enforcement officer making a traffic stop could order the driver and any passengers to exit the vehicle pending completion of the stop.[8]  The officer could not, however, frisk the driver or any passenger without reasonable suspicion that he was armed and dangerous.[9]

---

[4] Ornelas v. United States, 517 U.S. 690, 699 (1996).

[5] Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).

[6] U.S. Const. amend. IV.

[7] United States v. Hunt, 253 F.3d 227, 230 (5th Cir. 2001).

[8] Wilson, 519 U.S. at 415; Mimms, 434 U.S. at 111.

[9] Knowles v. Iowa, 525 U.S. 113, 118 (1998).

6

Neither could an officer search the passenger compartment of the vehicle unless he had reasonable suspicion that it contained weapons.[10]  Opening a vehicle's door or piercing the interior airspace constitutes a search.[11]  Reasonable suspicion must exist prior to a search.[12]

Reasonable suspicion exists when, under the totality of the circumstances, there are particular and articulable facts that, when taken together with inferences rationally drawn from them, warrant an intrusion.[13]  Reasonable suspicion requires more than a mere hunch.[14]

C.    Merits

Meredith contends that Officer Micheu lacked the requisite reasonable suspicion prior to opening the vehicle's passenger-side door and frisking him.  Specifically, Meredith argues that the factors cited by the district court were insufficient to constitute reasonable suspicion.  Thus, Meredith asserts, the fruits of the illegal search —— the revolver, the ammunition, and

---

[10] Michigan v. Long, 463 U.S. 1032, 1049 (1983).

[11] Hunt, 253 F.3d at 231; United States v. Ryles, 988 F.2d 13, 15 (5th Cir. 1993).

[12] Florida v. J.L., 529 U.S. 266, 271 (2000).

[13] United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) (en banc).

[14] Id.

7

his statement —— should have been suppressed. The flaw in Meredith's reasoning is his conflating two sequential steps: (1) opening the door and making a visual inspection of Meredith's person; and (2) patting down Meredith after spotting the suspicious bulge in his pants.

We offer no opinion on whether these facts and circumstances were sufficient for Officer Micheu to form the reasonable suspicion necessary <u>before</u> he opened the vehicle's passenger-side door and pierced the vehicle's interior airspace. Instead, we take this opportunity to recognize the natural extension of the Supreme Court's holdings in <u>Mimms</u> and <u>Wilson</u>, viz., that the officer needed no suspicion to open the door and perform a brief visual check of the disabled occupant any more than he needed suspicion to order the occupants to step out of the car in the first place.

In <u>Mimms</u>, the Court held that once a vehicle has been lawfully detained for a traffic violation, safety concerns permit law enforcement officers to order the driver out of the vehicle.[15] In <u>Wilson</u>, the Court extended its holding in <u>Mimms</u> to permit law enforcement officers to order any passengers in the vehicle to exit.[16]

---

[15] 434 U.S. at 111.

[16] 519 U.S. at 414-15.

8

Thus, pursuant to <u>Mimms</u> and <u>Wilson</u>, when an officer stops a vehicle for a valid traffic purpose, he may — without any suspicion — order the driver and any passengers to exit the vehicle.[17] Then, after the occupants obey, the officer may pat down any, who by virtue of articulable facts produced by the officer's appropriate visual inspection, he reasonably suspects constitute a danger to officer safety.[18]

Here, having made a valid traffic stop, the NOPD officers were permitted to order both the driver and Meredith out of the vehicle. Had Meredith stepped out of the vehicle and had Officer Micheu observed the handgun-like bulge in Meredith's trousers, the officer would have been acting within the law by frisking Meredith. But, as Meredith did not obey, claiming paraplegia and thus the physical inability to get out on his own, Officer Micheu had to act quickly in some alternative manner to ensure safety. He chose to open the passenger-side door and look in.

We conclude that the most reasonable way to serve the officer-safety purpose of <u>Mimms</u> and <u>Wilson</u> under circumstances like these is to extend the Court's reasoning to include a minimally necessary visual inspection of a non-exiting occupant while he is still seated in the car. This solution has the

---

[17] <u>Mimms</u>, 434 U.S. at 11; <u>Wilson</u>, 519 U.S. at 414-15.

[18] <u>Mimms</u>, 434 U.S. at 111-12.

9

additional benefit of ensuring equal treatment of handicapped and non-handicapped occupants alike. Without thus extending Mimms and Wilson, a handicapped occupant (or one claiming to be) would receive greater immunity from search than would a non-handicapped one and would also pose a greater danger to the officers.

Our extension of the rulings of Mimms and Wilson will further their goals. The primary motivation behind these two cases is the enhancement of officer safety. The Court was patently concerned with the heightened risk attendant on approaching occupants in a vehicle.[19] Without such an extension, officers would have to conduct a traffic stop in which an occupant would remain seated inside the vehicle and thus largely unobservable —— the very danger sought to be remedied by Mimms and Wilson. Although an officer will still be at a heightened risk when approaching an occupant seated in a motor vehicle, our holding today will allow the officer to maintain unquestioned command of the situation[20] and to conduct the same visual inspection that he could have had the occupant exited the vehicle, both of which benefit officer safety.

In addition, this extension is the only practical way for an officer to confirm an occupant's claimed handicap or expose his

[19] Wilson, 519 U.S. at 413; Mimms, 434 U.S. at 110.

[20] Michigan v. Summers, 452 U.S. 692, 702-03 (1981).

10

pretext.  Without a full visual inspection of the individual, an officer would simply have to accept the occupant's word as truth. This would obviously allow an untruthful occupant to self-immunize himself from search and thereby provide an opportunity either to ambush an unsuspecting, "sitting duck" officer or to destroy or continue to conceal contraband hidden on his person.

Equally important for Fourth Amendment purposes, allowing an officer to open the car door and view a handicapped occupant is less intrusive than other options, such as (1) ordering the handicapped occupant to crawl out of the car or exit as best he can; (2) detaining all occupants until a warrant could be obtained; or (3) detaining all occupants until a wheelchair or other device to enable the disabled occupant's exit could be obtained.[21]  Furthermore, opening the door and eyeing the occupant is not significantly more intrusive than peering through a window and observing items in plain view.  Taking all this into consideration, we are satisfied that extending <u>Mimms</u> and <u>Wilson</u> to allow officers to open a lawfully stopped vehicle's door and make an appropriate visual inspection of an occupant who claims

---

[21] This third option then gives rise to more uncertainty; namely, how will the occupant exit the vehicle —— will the officers be allowed physically to help or lift the occupant out of the vehicle, absent his consent, or will they have to enlist the aid of a person to whom the occupant consents, despite simultaneously increasing their own exposure to danger and unduly prolonging the stop?

to be physically unable to get out on command is not unreasonable under the Fourth Amendment.

### III. <u>CONCLUSION</u>

The Fourth Amendment permits law enforcement officers who have lawfully detained a motor vehicle to order the driver and any passengers to step out, and neither probable cause nor reasonable suspicion is required. The Supreme Court has blessed this practice as not unreasonable under the Fourth Amendment, because concerns for officer safety outweigh the minimal intrusion on the privacy of drivers and passengers. The same safety concerns, as well as the lack of any feasible, less intrusive alternative, support permitting a law enforcement officer, who orders an occupant to exit a vehicle and is met with the occupant's claim of being physically unable to do so, to open that occupant's door and conduct a minimally necessary visual inspection of just his person. If this in turn should produce articulable facts that lead the officer to form a reasonable suspicion that the occupant is armed and dangerous, the officer may then conduct a pat down to the same extent that he could have following an occupant's exit from the vehicle on his own. Accordingly, we affirm the district court's order denying suppression of the contested evidence and affirm Meredith's conviction and sentence.

AFFIRMED.