PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3251
_____

UNITED STATES OF AMERICA,
                                              Appellant

v.

DONTE DOWDELL, a/k/a Pooh
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-21-cr-00363-001)
District Judge: Honorable John M. Vazquez

Argued November 16, 2022

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*

(Filed: June 2, 2023)

Philip R. Sellinger
Mark E. Coyne [ARGUED]
Office of United States Attorney
970 Broad Street

Room 700
Newark, NJ 07102
    *Counsel for Appellant*

Richard Coughlin
Rahul K. Sharma [ARGUED]
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


HARDIMAN, *Circuit Judge.*

The United States appeals an order of the District Court granting Donte Dowdell's motion to suppress evidence. During the suppression hearing, the Court held the Government waived a potentially winning argument. The Government claims the Court abused its discretion in finding the argument waived and, alternatively, in not excusing the waiver. Unpersuaded by either argument, we will affirm.

I

A

This appeal arises out of a traffic stop in Franklin Township, New Jersey. On the evening of January 8, 2021, several members of the Somerset County Organized Crime and

Narcotics Task Force were patrolling in unmarked cars in response to recent gang-related crimes and shootings. One of the officers, Detective Nicholas Gambino, recognized a white BMW he had seen earlier that evening parked in front of a known meeting place for the Bounty Hunter Bloods. Gambino followed the car, saw it turn without signaling, and radioed his supervisor, Sergeant William Brown, to pull the car over for a traffic violation.

Sergeant Brown, who was driving with two other officers, initiated the traffic stop by activating the lights and siren on his SUV. Gambino arrived at the scene and shined his flashlight by the left rear door of the car. Dowdell, whom Gambino knew from prior arrests to be a member of the Bounty Hunter Bloods, was sitting in the back seat.

After identifying Dowdell, Gambino opened the left rear car door. Gambino testified: "I knew [Dowdell] was the victim of a recent gang-involved shooting, so at that time I opened the door, [to] attempt to speak to him, have a conversation, maybe get any other information about that particular shooting which was an open investigation at that time." App. 105. Gambino also testified that it was common practice to open a car door to speak with a passenger. On cross-examination, Gambino added that approaching the rear door was a precautionary measure for officer safety.

After opening the door, Gambino saw a bulge in Dowdell's jacket at chest-level. Gambino immediately ordered Dowdell out of the car and patted him down. When Gambino

discovered a fully loaded semi-automatic firearm with a bullet in the chamber, he arrested Dowdell.

## B

The Government charged Dowdell with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Dowdell moved to suppress the gun and ammunition evidence. The District Court held an evidentiary hearing to determine whether there had been a traffic violation justifying the initial stop and whether Gambino had seen the bulge in Dowdell's jacket justifying the frisk. Following the evidentiary hearing, the Court asked for supplemental briefing. Dowdell then argued that Gambino violated his Fourth Amendment rights under *Florida v. Jardines*, 569 U.S. 1, 5 (2013), by "physically intruding on" the car door to speak with Dowdell about his gang activity. App. 236–240.

The Government's supplemental brief in response did not mention *Jardines*. Instead, the Government focused on the traffic stop itself, arguing it was justified by a reasonable articulable suspicion that someone in the car was engaging in criminal activity under *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The Government also contended that Gambino had reasonable suspicion a crime was being committed that justified opening the door to speak with Dowdell. In his supplemental reply brief, Dowdell insisted that the Government had waived any objection to his *Jardines* claim because the Government's

4

argument that opening the door was reasonable under the totality of the circumstances was too generic.

## C

The parties characterize the District Court's statements at the suppression hearing differently, so we review them in detail. At the beginning of the hearing, the Court asked the Government to confirm that it correctly understood the Government's argument regarding Gambino's justification for opening the car door:

> The Court: My understanding is that the Government's position is that not only—that the opening of the door was appropriate and that's based on an argument pursuant to the *Terry* standard that Detective Gambino had a reasonable articulable suspicion in light of the totality of the circumstances. Correct?
>
> A: That's absolutely correct, Your Honor, yes.

App. 10. The Court later credited Gambino's testimony that there had been a traffic violation. The Court also determined that once Gambino saw the bulge in Dowdell's jacket, which had happened only after Gambino opened the door, the frisk was justified.

Next, the Court turned to the constitutionality of opening the car door in the first place. Before announcing its decision, the Court said: "I want to make clear that the positions of the parties are dispositive to my decision." App. 27. The Court then ruled: "I disagree with the Government that the detective had a reasonable articulable suspicion to open the

5

door at that time." App. 28. Gambino said he opened the door "because he wanted to talk" about an unrelated crime—the recent drive-by shooting at Dowdell's house—and Gambino's desire to investigate could not alone establish reasonable suspicion. App. 29. As the Court observed, no court has found that officers can frisk car passengers based solely on their gang membership and the fact that they are in a car that violates a traffic law.

After ruling that the evidence would be suppressed because the Government failed to establish that Gambino opened the door without violating Dowdell's Fourth Amendment rights, the Court suggested that the Government might have made an alternative argument:

> I want to make clear for purposes of review that I do think the Government had an alternate analysis that was available to them, but it was not raised by the Government. It seems, to me, if the Government had raised the alternate analysis, the Government would have prevailed, but I do not think it would be fair to rule on an issue based on an argument not raised by the Government.

App. 32. The Court expanded on what it thought the alternative argument might be, explaining that two Supreme Court cases—*Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam) and *Maryland v. Wilson*, 519 U.S. 408 (1997)—could be extended to permit officers to order people out of a car during a valid traffic stop. *Mimms* established the bright-line rule that police may order the driver out of a car during a traffic stop. *Mimms*, 434 U.S. at 111 n.6. *Wilson* extended the *Mimms* rule to passengers. *Wilson*, 519 U.S. at 414–15. The Court analogized: "if the officer can order you out of the car, the

6

officer can also open the door to the car. . . . At most I see that being a de minimis additional intrusion on the passengers' Fourth Amendment rights." App. 35.

The Court then re-emphasized that this alternative argument had never been made, so it was waived. In the Court's view, it would not "be fair to rule on an issue based on an argument not raised." App. 32. The Court ruled solely based on the argument the Government briefed and affirmed at the suppression hearing: "[U]ltimately, I will grant the motion to suppress because I do not find the Government's argument that there was a reasonable articulable suspicion to open the car door to be valid. On that ground I will grant the motion to suppress." App. 37.

After the Court ruled, the Government took exception. The Government insisted that because it had cited *Mimms* and *Wilson* in its supplemental brief, it had not waived the argument that those cases could be extended to include an officer opening a car door. The Court answered that this *Wilson*-extension argument had been waived because, although the Government cited the relevant cases, it did so only in support of its reasonable suspicion argument, and the brief failed even to mention their holdings. The Court explained: "that's why I clarified with [counsel] at the beginning: 'Is your argument that this is reasonable articulable suspicion?' And I made that clear on the record." App. 38. Further justifying its decision, the Court explained that Dowdell's counsel "didn't get the benefit of that argument so I could hear him reply." App. 40. The Court's order suppressing the evidence held the Government had not proven its legal theory (reasonable

suspicion), but it did not mention waiver. The Government appealed.

## II[1]

The Fourth Amendment prohibits "unreasonable searches and seizures." The Supreme Court considers presumptively unreasonable any warrantless searches and seizures, with certain "specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (citations omitted). "Evidence obtained through unreasonable searches and seizures must be suppressed as 'fruit of the poisonous tree.'" *United States v. Bey*, 911 F.3d 139, 144 (3d Cir. 2018) (cleaned up).

When a defendant moves to suppress evidence, the Government—not the Court— must show that each warrantless act constituting a search or seizure was reasonable. *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). The act at issue here is Detective Gambino opening the car door, which the Government concedes was a search. The District Court found, and the Government now concedes, that there was no reasonable suspicion to justify opening the door.

This appeal raises two issues. First, whether the District Court abused its discretion in finding the Government waived the argument that *Wilson* should be extended to justify opening the door. Second, even if the Government did waive (or forfeit)

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731.

that argument, whether the District Court abused its discretion by not excusing that waiver (or forfeiture).

We review the District Court's determination that the Government waived (or forfeited) the *Wilson*-extension argument for abuse of discretion. *See Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 219 n.9 (3d Cir. 2021).

A

We begin with the first issue. The Government argues that it neither waived, nor forfeited, the *Wilson*-extension argument. Dowdell insists it did.

The parties accuse each other of misunderstanding the difference between waiver and forfeiture. Those arguments are understandable because courts only recently have focused on the difference between the two. "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017). Waiver is the "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The Supreme Court has deemed an argument waived, for example, when a party "twice informed the U.S. District Court that it would not challenge, but is not conceding, the timeliness of [the petition]." *Wood v. Milyard*, 566 U.S. 463, 465 (2012) (cleaned up). In contrast, "forfeiture is the failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993). "[A]n example of [forfeiture] is an inadvertent failure to raise an argument." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). The distinction between waiver and forfeiture "can carry great significance." *Barna*, 877 F.3d at 146. A party's

9

waiver should be enforced. *Id.* at 146 n.7; *Wood*, 566 U.S. at 472–73 ("It would be 'an abuse of discretion' for a court 'to override a State's deliberate waiver'") (citation omitted). For a waiver to be valid, however, "the right said to have been waived must be waivable." *Gov't of V. I. v. Rosa*, 399 F.3d 283, 290 n.6 (3d Cir. 2005). Although we cannot reach waived arguments, appellate courts may "resurrect" forfeited arguments in "extraordinary circumstances." *Wood*, 566 U.S. at 471 & n.5; *see also Barna*, 877 F.3d at 147. This is because "the refusal to consider arguments not raised is a sound prudential practice, rather than a statutory or constitutional mandate, and there are times when prudence dictates the contrary." *Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring).

We enforce waiver and forfeiture against criminal defendants and the government equally. *See Olano*, 507 U.S. at 731 ("No procedural principle is more familiar . . . than that a constitutional right . . . may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.") (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)); *Ritter*, 416 F.3d at 268 ("the government should not be afforded a second opportunity to carry its burden that the challenged evidence should not be suppressed.").

The policy supporting waiver and forfeiture is the "party presentation principle," which applies "in both civil and criminal cases, in the first instance and on appeal." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "[A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to

10

relief.'" *Id*. at 244 (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring)).

Waiver and forfeiture "serve[] several important judicial interests, protecting litigants from unfair surprise; promoting the finality of judgments and conserving judicial resources; and preventing district courts from being reversed on grounds that were never urged or argued before [them]." *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir. 2009) (cleaned up). In our justice system, "litigants, not the courts, choose the facts and arguments to present." *United States v. James*, 955 F.3d 336, 344 (3d Cir. 2020). Trial court proceedings are the "main event," and not simply a "tryout on the road" to appellate review. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). And "[t]o the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights." *Greenlaw*, 554 U.S. at 243–44.

B

The Government insists it neither waived nor forfeited the *Wilson*-extension argument in the District Court. We disagree.

The Government did not preserve the *Wilson*-extension argument by citing *Mimms* and *Wilson* in its supplemental brief. "[S]imply citing a case in the District Court is not sufficient to raise all arguments that might flow from it." *United States v. Dupree*, 617 F.3d 724, 731 (3d Cir. 2010). The Government cited *Mimms* and *Wilson* to support the argument it now concedes was wrong: that there was reasonable

11

suspicion to justify opening the car door. In its supplemental brief to the District Court, the Government wrote:

> The Supreme Court has routinely recognized that traffic stops pose substantial risks to the police who perform them and has extended the constitutional principals [sic] in *Terry* to such encounters. *See, e.g.*, *Maryland v. Wilson*, 519 U.S. 408, 413–15 (1997), *Michigan v. Long*, 463 U.S. 1032, 1045–52 (1983); *Pennsylvania v. Mimms*, 434 U.S. 106-12 (1977). Further, in *United States v. Delfin-Colina*, the Third Circuit expressly adopted "reasonable suspicion," not "probable cause," as the applicable standard when examining the lawfulness of a traffic stop. 464 F.3d 392, 396–97 (3d Cir. 2006). . . . Here, the actions of the driver of the BMW led the officers to "quickly develop reasonable suspicion or probable cause."

App. 257.

As the block quotation demonstrates, the Government cited *Wilson* and *Mimms* to support its claim under *Terry* that the officers had reasonable suspicion to conduct the traffic stop. The brief does not make the *Wilson*-extension argument the District Court identified and the Government now presses on appeal. For that reason, the District Court concluded that the Government "waived" the *Wilson*–extension argument, "because they did not raise it in the brief." App. 41. That failure was forfeiture, not waiver. *See Barna*, 877 F.3d at 147.

But the District Court's misnomer was not an abuse of discretion because, despite our recent efforts to express waiver

12

and forfeiture more accurately, Supreme Court caselaw, our caselaw, and former Rule 12 of the Federal Rules of Criminal Procedure all used the term waiver to include forfeiture, while preserving the legal distinction. *See, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring) ("[We] have so often used them interchangeably that it may be too late to introduce precision."); *Dupree*, 617 F.3d at 727 n.1 (explaining why the language of former Rule 12(e) of the Federal Rules of Criminal Procedure has led many to use the terms interchangeably).

The dissent deems the District Court's use of the term "waiver" instead of "forfeiture" to be an error constituting an abuse of discretion. It claims the 2014 revisions to Rule 12 of the Federal Rules of Criminal Procedure resolved the confusion between waiver and forfeiture. Dissent Part I.A. If only that were so. In 2017, the Supreme Court noted that judges frequently use forfeiture and waiver "interchangeably" even though they "are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017). Our Court has done likewise—including in the very case that establishes the standard of review we apply here. *See Kars 4 Kids, Inc.*, 8 F.4th at 219 n.9 ("We review a district court's determination whether a party waived an argument by failing to raise it earlier in the proceedings for abuse of discretion."); *see also Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 n.8 (3d Cir. 2019) ("As Baloga has not meaningfully briefed or argued his speech claim on appeal, he has waived it.") (citing *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017), which also used "waiver" instead of "forfeiture"); *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 83 n.12 (3d Cir. 2017) (referring to a failure to raise an argument in briefing as "waiver," and approving of the

13

district court's decision not to let plaintiffs make those new arguments at oral argument). So the dissent's statement that "no intervening caselaw suggests an ongoing confusion between waiver and forfeiture" is demonstrably false. *See* Dissent Part I.A.

The dissent's further insistence that we cannot excuse conflation of the terms because the Supreme Court has not made the same mistake is an overly harsh rule accepted by no other circuit. *See* Dissent Part I.A. The Supreme Court has also explicitly declined to articulate any general rule regarding waiver, leaving it "primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008) (citation omitted). Judicial modesty requires that we acknowledge that our Court's inexact usage of "waiver" and "forfeiture" could well have influenced the District Court's misnomer here. The District Court's conflation of the terms "waiver" and "forfeiture" was not an abuse of discretion.

C

The Government next argues it neither waived nor forfeited the *Wilson*-extension argument because it adopted the argument when the Court was ruling from the bench. The transcript of the suppression hearing indicates otherwise. The Court opened proceedings by confirming that it correctly understood the Government's argument. The Government said it was "absolutely correct" that its argument was reasonable suspicion. App. 10. The Government said nothing about any alternative argument that *Wilson* should be extended or that

14

something less than reasonable suspicion might justify opening the car door.

Also unpersuasive are the Government's claims, after the Court suggested that *Wilson* could be extended to license Gambino's actions, that the Government had made that argument all along. The Court called the Government's bluff, explaining "with all due respect you try to massage what's already been submitted. That's why I clarified with [counsel] at the beginning: 'Is your argument that this is reasonable articulable suspicion?' And I made that clear on the record." App. 38.[2]

Even if the Government had affirmatively made a new argument at the oral hearing, we are doubtful that this can overcome any forfeiture in its briefing. The dissent argues that new arguments can be made at suppression hearings. But the dissent, like the Government on appeal, cites no caselaw for that proposition. In fact, our caselaw indicates the opposite,

---

[2] The dissent argues that the Government implied that it had more than one alternative argument because the District Court used the phrase "not only." Dissent Part I.B. This is a strained reading of the colloquy between the Court and counsel. The Court asked if "the Government's position is that not only— that the opening of the door was appropriate and that's based on an argument pursuant to the *Terry*[?]" The Government responded: "That's absolutely correct, Your Honor, yes." The Court's halting mention of the phrase "not only"—which was followed by one point, not two—did nothing to help the Government advance an alternative argument. We know that to be the case because the Government reiterated that its argument was "absolutely" *Terry*.

generally holding that parties cannot get a second bite at the apple at oral rulings. *See, e.g.*, *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d at 83 n.12 (approving of a district court's decision not to let plaintiffs make new arguments at oral argument). In any event, the Government did not suggest that it was making any new arguments at the suppression hearing, but rather insisted that it had not forfeited the *Wilson*-extension argument in its briefing.[3] So the District Court was correct that the Government's last-ditch attempt to "massage" what it submitted was unavailing.

Our review of the record confirms the District Court's decision that the Government never made the *Wilson*-extension argument. The Government's sole legal theory was that reasonable suspicion justified Detective Gambino opening the car door. For these reasons, we hold that the District Court did not abuse its discretion when it found that the Government waived (forfeited) the *Wilson*-extension argument.

III

The Government's fallback position is that even if it forfeited the *Wilson*-extension argument, the District Court

---

[3] The dissent argues that the Government affirmatively committed to the alternative *Wilson*-extension argument, citing Appendix pages 37 through 40. Dissent Part I.B. At those pages the Government merely continued to protest that its *brief* had not failed to raise the *Wilson*-extension argument. The Government did not proffer a new (alternative) argument.

16

abused its discretion in not excusing the forfeiture.[4] The Government makes two arguments in support of this position. Neither is persuasive.

A

First, the Government argues that evidence cannot be suppressed when the District Court concludes there has been no Fourth Amendment violation. The Government's premise is flawed. The Court ruled on the legal argument the Government presented—reasonable suspicion—and disclaimed ruling on the *Wilson*–extension argument. The Court used conditional language when discussing whether extending *Wilson* would cure any Fourth Amendment violation. App. 40 ("I'm only saying I *think* that's the way I *would* have ruled because [opposing counsel] didn't have the opportunity to reply."); *see also id.* ("Let's make the record clear. . . . I *think* I *could* have found that [opening the door] was constitutional."); App. 32 ("It *seems*, to me, *if* the Government had raised the alternate analysis, the Government *would* have prevailed.") (all emphases added).

More fundamentally, the Court found a Fourth Amendment violation. The Court suppressed the evidence

---

[4] The Government also argues that the District Court should have ordered additional briefing on the propriety of extending *Mimms* and *Wilson*. The Government cited no caselaw or rule suggesting that a court's failure to order supplemental briefing—let alone a second round of supplemental briefing— is an abuse of discretion. In any event, the Government essentially conceded that additional briefing would not have been helpful. Gov't Br. 22 ("[I]t's hard to see what he could have said in additional briefing.").

because the Government's reasonable suspicion argument—which the Government confirmed was its only argument—failed as a matter of law. The Court suppressed the evidence on that basis alone.

The Government also claims the District Court had to extend *Wilson* because that is the "correct law." Gov't Br. 19–20. This claim is based on another flawed premise because we have yet to extend *Wilson* to the circumstances presented here. Whether an officer can open a car door during a traffic stop based on less than reasonable suspicion is an open question in our circuit. And our sister courts are divided on the question.[5]

In sum, the District Court never held there was no

---

[5] Dowdell incorrectly claims that every federal case to consider what justifies opening a car door classified the inquiry as requiring reasonable suspicion analysis. Dowdell Br. 13–14 (collecting cases). The Eleventh Circuit has extended *Mimms* and *Wilson* such that reasonable suspicion was *not* necessary to justify opening a car door. *United States v. Cotton*, 721 F.2d 350, 352 (11th Cir. 1983). The Fifth Circuit has similarly extended *Wilson* without requiring reasonable suspicion, but only in the narrow context of opening a door after an occupant is ordered to exit the vehicle and claims to be physically unable to do so. *United States v. Meredith*, 480 F.3d 366, 371 (5th Cir. 2007). The subsequent search is limited to a "minimally necessary visual inspection of just his person." *Id.* Three federal circuits do require reasonable suspicion to justify opening a car door. The D.C. and Fourth Circuits have extended *Mimms* and *Wilson* to include opening a car door, but only when there was also reasonable suspicion, which the Government concedes did not exist here. *United States v.*

Fourth Amendment violation. So the Court did not abuse its discretion in finding the *Wilson*-extension argument forfeited. The Government's argument that the applicable law can never be waived fails because the law here is not settled.[6] And even if we were to decide the Fourth Amendment question ourselves, we would still be unable to resolve this case in the Government's favor because the Government failed to

*Brown*, 334 F.3d 1161, 1169 (D.C. Cir. 2003); *United States v. Stanfield*, 109 F.3d 976, 981, 984–85 (4th Cir. 1997). Similarly, the Ninth Circuit requires reasonable suspicion to open a door and lean inside a car, considering such actions to implicate greater privacy concerns than merely ordering the driver out of car under *Mimms*. *United States v. Ngumezi*, 980 F.3d 1285, 1288–89 (9th Cir. 2020) ("even if opening a door and leaning into the car is a lesser intrusion on the driver's liberty, it is a greater intrusion on the driver's privacy interest in the car's interior.").

[6] The dissent argues that the caselaw is settled, citing *United States v. Hurtt*, 31 F.4th 152, 161–63 (3d Cir. 2022). Dissent Part I.C. But *Hurtt* was not published at the time of the District Court's ruling, so the District Court can't be faulted for not applying it. And even if *Hurtt* had been published, it does not establish the *Wilson*-extension argument as the law in our Circuit. *Hurtt* found that leaning into a vehicle was off mission under *Rodriguez* and unlawful because there was no reasonable suspicion. That doesn't mean that opening a car door is always lawful. In fact, the officer in *Hurtt* didn't open the car door and the opinion didn't even cite *Wilson*. *See supra* n.6. As we explain today, whether the *Wilson*-extension argument applies in our Circuit remains an open question.

19

preserve the *Wilson*-extension argument on appeal.[7]

B

The Government alternatively argues that the District Court abused its discretion in not excusing the forfeiture.[8] We disagree.

The Government is correct that enforcing forfeiture in suppression hearings does not promote the exclusionary rule's "*sole* purpose" of "deter[ring] misconduct by law enforcement." *Davis v. United States*, 564 U.S. 229, 246 (2011) (emphasis in the original)**;** It is also correct that the exclusionary rule is not meant "to punish the errors of judges and magistrates" who mistakenly issue warrants, *United States v. Leon*, 468 U.S. 897, 916 (1984); or "mistakes by court

---

[7] In *United States v. Joseph*, we explained how to preserve an argument on appeal: the same legal rule and same facts must have been presented in the District Court. 730 F.3d 336, 342 (3d Cir. 2013). The Government argued in the District Court that opening the door was justified by reasonable suspicion. On appeal, it claims opening the door was justified by something less than reasonable suspicion. These are two different legal rules. So the *Wilson*-extension argument was not preserved on appeal either.

[8] The Government did not argue that the District Court should have excused any forfeiture based on any of the traditional forfeiture exceptions. *See Barna*, 877 F.3d at 147 (collecting cases). Nor did it argue that the exclusionary rule should not have applied because Gambino acted in good faith. *See Davis v. United States*, 564 U.S. 229, 238 (2011).

employees" in their clerical duties, *Arizona v. Evans*, 514 U.S. 1, 14 (1995); or good faith but mistaken understandings of the law by police, *Leon*, 468 U.S. at 922–23. Here, Dowdell avoids trial not because the officer blundered, but because the Government lawyer may have blundered.

Although the District Court's suppression of evidence does nothing to deter police misconduct, it would be unwise to categorically excuse waivers or forfeitures in suppression hearings. Doing so would violate the party presentation principle, the bedrock of our adversarial system. That principle ensures that courts decide only those issues argued by interested and motivated litigants. The Supreme Court recently reaffirmed the party presentation principle in *United States v. Sineneng-Smith*. 140 S. Ct. 1575, 1579–80 (2020). In that case, the Ninth Circuit had identified new arguments on appeal, invited supplemental briefing on them from *amici*, and restructured the oral argument and its decision based on those arguments. *Id.* at 1580–81. According to the unanimous Supreme Court, this "radical transformation" of suggesting and ruling on an unpreserved argument "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Id*. at 1578, 1582. As the Supreme Court explained, "[c]ourts are essentially passive instruments" that "do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Id.* at 1579 (cleaned up).

The party presentation principle supports our practice of enforcing forfeiture against the government in the same way we do with defendants. *See, e.g.*, *Ritter*, 416 F.3d at 268. That practice includes enforcing forfeiture against the government even when doing so does not further the purpose of the

21

exclusionary rule. For example, a government failure to argue that a defendant has no Fourth Amendment "standing" is "subject to the ordinary rule that an argument not raised in the district court is [forfeited] on appeal." *United States v. Stearn*, 597 F.3d 540, 551 n.11 (3d Cir. 2010).[9] When the government fails to bring a viable Fourth Amendment standing challenge, defendants benefit from the exclusionary rule even when their own Fourth Amendment rights may not have been implicated.

And when, as in this case, the government is a party, categorically excusing forfeiture would raise separation of powers concerns. In a suppression hearing, the government—not the Court—bears the burden of proving there was no Fourth Amendment violation. *Ritter*, 416 F.3d at 261. Had the District Court intervened here by excusing the Government's forfeiture and applying the Court's own novel legal theory, it would have undermined the judiciary's neutrality and encroached upon the executive branch's prosecutorial prerogative to argue its case.

For these reasons, we decline the Government's invitation to create an exception to protect it from forfeiting

---

[9] We use the term "standing" not in the jurisdictional sense but as shorthand for the determination of whether Fourth Amendment rights have been implicated. *Stearn*, 597 F.3d at 544 n.2.

22

arguments in suppression hearings. It follows that the District Court did not abuse its discretion in declining to do so as well.

* * *

We have not yet decided whether police officers may open car doors during routine traffic stops based on less than reasonable suspicion without violating the Fourth Amendment. The District Court suggested that the Supreme Court's decision in *Wilson* might be extended to cover those circumstances. But the Government never raised or litigated that argument in the District Court. So the argument was forfeited. And the argument the Government did make—that Detective Gambino had reasonable suspicion to believe crime was afoot that justified his opening the car door—was invalid, as the Government now concedes. We also hold that the District Court did not abuse its discretion when it did not excuse the Government's forfeiture. For these reasons, the rule of law requires us to affirm the order of the District Court.

United States of America v. Donte Dowdell, No. 21-3251

FISHER, *Circuit Judge*, dissenting:

Donte Dowdell is a felon who was found in possession of a firearm during a lawful traffic stop. The District Court said the actions of the officer conducting the stop did not violate the Constitution. We have an obligation to apply the correct law. Accordingly, I dissent from the majority opinion. The District Court based its waiver determination on an incorrect application of the law because the Government did not intentionally relinquish or abandon the *Wilson*-extension argument. Nor is it clear the Government failed to preserve that argument at the suppression hearing. But even if the Government failed to preserve the *Wilson*-extension argument, courts are obligated to apply the legal principles they identify as correct, and the District Court correctly recognized that officers do not require reasonable suspicion to open a car door when conducting a traffic stop.

I

A. The District Court was incorrect in finding the Government waived its *Wilson*-extension argument and in not applying Rule 12 of the Federal Rules of Criminal Procedure.

Although an argument may be forfeited if not timely asserted, waiving an argument requires "intentional relinquishment or abandonment." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In ruling from the bench, the District Court stated:

> Let's make the record clear. Defendant's position was you waived it because you didn't raise it. So I think it would be fair to say

> *you have waived that argument because you didn't raise it*. I'm also making a separate finding that even though I think I could have found that it was constitutional, *that argument has been waived by the United States by their failure to raise it*.

App. 40 (emphasis added).

Regardless of whether the Government failed to raise the *Wilson*-extension argument in its briefing, the law does not treat unraised arguments as waived. *Olano* at 733. Moreover, it is undisputed that the Government did not intentionally relinquish or abandon the argument as required for waiver. *Id.* The District Court thus relied on an incorrect view of the law when it found the Government waived the *Wilson*-extension argument due to a failure to raise.

The majority does not dispute that the District Court based its ruling on an incorrect view of waiver law. Nevertheless, the majority says the District Court's ruling was just a "misnomer," because the former version of Rule 12 of the Federal Rules of Criminal Procedure and outdated case law developed in reliance on that former version used the term waiver to include forfeiture. Maj. Op. II.B. But the Supreme Court amended Rule 12 to resolve that confusion nearly ten years ago.

To accept the majority's position requires ignoring the nearly ten-year-old amendment to Rule 12 of the Federal Rules of Criminal Procedure, because that amendment resolved precisely the confusion the majority believes excuses the District Court's error. Prior to 2014, Rule 12 stated that failing to raise a suppression motion "shall constitute waiver thereof,

2

but the court for cause shown may grant relief from the waiver." Fed. R. Crim. P. 12(e) (2013). This former version of Rule 12's waiver-unless-good-cause-shown language created confusion because it appeared to be in tension with Rule 52(b) which permitted a court to review a "plain error that affects substantial rights," "even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Both rules seemed to address what a court should do with a suppression motion not timely raised. In 2008, we found that when a criminal defendant fails to move to suppress evidence before the District Court, we apply Rule 12's waiver rule, not Rule 52(b). *United States v. Rose*, 538 F.3d 175, 182–84 (3d Cir. 2008) (citation omitted). And as cited by the majority, we continued to rely on the former Rule 12 when we explained what a party must do to "preserve [a suppression] argument and avoid waiver" pursuant to *Rose*. *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013).

That all changed in 2014, when the Supreme Court deleted the word "waiver" from Rule 12. Now, instead of stating that failure to raise a suppression motion "shall constitute waiver thereof," Rule 12 states the motion is "untimely" and may be considered if the party shows good cause. Fed. R. Crim. P. 12(c)(3). (The 2014 amendments relocated the effect of failure to raise issues by pretrial motion from (e) to (c)(3)). The Rule is silent regarding arguments opposing motions to suppress. Per the advisory committee notes accompanying the change, Rule 12 "never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion." Fed. R. Crim. P. 12 advisory committee's note to 2014 amendment. Nearly a decade has passed since the Supreme Court made this change to "avoid possible confusion" brought about by using the term "waiver,"

3

and no intervening caselaw suggests an ongoing confusion between waiver and forfeiture.[1] *Id.* Thus, there are no grounds on which the District Court could conclude a party who failed to timely move under Rule 12 intended to intentionally relinquish, and thus waive its right to make such a motion. Nor is there a basis to conclude a party who failed to raise an argument in opposition intended to waive that argument either. Accordingly, the District Court's waiver ruling should not be excused as a misnomer. Rather, the District Court should be required to apply the current version of Rule 12 and determine if it precluded the Government from advancing the *Wilson*-extension argument at the suppression hearing.

B. The Government preserved its *Wilson*-extension argument.

The majority believes that even though the District Court erred in finding waiver, suppression is still appropriate because the Government nevertheless forfeited the *Wilson*-extension argument. Again, I disagree. While it may have fallen short in its briefing, the Government "timely assert[ed]" and thus preserved the *Wilson*-extension argument by committing to it at the suppression hearing. *See Olano*, 507 at 733.

While the District Court rightly deserves commendation for recognizing the *Wilson*-extension argument correctly presented the law, it did not conduct the suppression hearing in a way that makes it possible for us to conclude the Government

---

[1] The Majority identifies post-2014 examples of this Court's "inexact usage of 'waiver' and 'forfeiture'" and notes they "could well have influenced the District Court's misnomer here." Maj. Op. II.B. The point stands that no intervening Supreme Court caselaw has perpetuated such confusion.

failed to preserve that argument. The Court opened proceedings by asking if "the Government's position is that **not only**—that the opening of the door was appropriate and that's based on an argument pursuant to the *Terry* standard . . ." App. 10 (emphasis added). While the Government answered that question in the affirmative, affirming its position is "not only" one argument necessarily implies the existence of at least one alternative argument. And as soon as the District Court allowed the Government to speak again, after it announced its erroneous waiver-based ruling, the Government affirmatively stated its commitment to the alternative *Wilson*-extension argument. App. 37–40. What that leaves us with is a District Court erroneously finding the "argument has been waived by the United States by their failure to raise it," and the Government responding "for the record" that it "never got to that point so I'm making that argument." App. 40, 42. Accordingly, because I cannot accept the District Court's incorrect waiver determination, and because the Government committed to the *Wilson*-extension argument prior to any legally correct disposition, the argument should be preserved for our review. Moreover, finding the argument preserved would comport with the Third Circuit's long-standing tradition of providing litigants the opportunity to make their cases in court absent jurisdictional issues.

C. The District Court was obligated to apply the correct legal principles.

The District Court concluded that officers do not need reasonable suspicion to open a car door in the context of a traffic stop, yet it failed to apply that correct legal principle. District courts are not limited to the legal theories advanced by the parties, rather they retain the power and obligation to apply the legal principles the court identifies as correct. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *United States*

5

*v. Engler*, 806 F.2d 425, 433 (3d Cir. 1986).

The District Court noted it did its "own independent research because I was not familiar with the issue as to whether an officer needed reasonable articulable suspicion to open a door." App. 32. The Court continued, "I conclude that an officer does not necessarily need reasonable articulable suspicion to open the door if the initial stop is legitimate." *Id*. And the Court found "uncontested that the initial traffic stop was lawful under the Fourth Amendment." App. 34. Therefore, because the initial stop was legitimate, the District Court was obligated to apply the correct legal principles and find Officer Gambino's opening of the door permissible under the Fourth Amendment.

The majority attempts to diminish the importance of the District Court's legal conclusion. It does so by spotlighting the District Court's use of conditional language in its discussion of how it would have ruled had it not found the Government waived the *Wilson*-extension argument, as if that somehow justifies deviating from applying the correct law. But the District Court's use of conditional language cuts in favor of the Government, as the only condition that prevented the District Court from finding Officer Gambino's actions constitutional was its own incorrect finding of waiver. The District Court said, "even though I think I could have found that it was constitutional, that argument has been waived by the United States by their failure to raise it." App. 40. Stated plainly, the District Court concluded Officer Gambino's actions were constitutional, and it only ruled against the Government because it did not believe the Government properly explained why they were constitutional, thus leading to its incorrect finding of waiver.

Moreover, contrary to the majority's assertion, the

6

*Wilson*-extension argument comports with Third Circuit precedent. Just last year, we found an officer's actions at a traffic stop were justified until the moment "he entered the truck and kneeled on the front seat." *United States v. Hurtt*, 31 F.4th 152, 161–63 (3d Cir. 2022). In doing so, we cited *United States v. Ngumezi* for its application of "a bright-line rule that opening a door and entering the interior space of a vehicle constitutes a Fourth Amendment search" and for its holding that an officer violated the Fourth Amendment when he "leaned in across the plane of the door." *Hurtt*, 31 F.4th at 163 n.85 (quoting *United States v. Ngumezi*, 980 F.3d 1285, 1289 (9th Cir. 2020)). While *Hurtt* was not published at the time of the District Court's ruling, the District Court independently identified what it believed (and we later affirmed) was the correct law. The District Court was obligated to apply that law. Accordingly, because Officer Gambino just opened the car door, but never entered the interior space of the vehicle, he did not violate the Fourth Amendment and the firearm should not be suppressed.

## D. The exclusionary rule does not support suppression.

This is at worst an instance of the Government engaging in cursory lawyering, not in constitutionally violative conduct. The majority and I agree that the Government is correct that enforcing forfeiture does not promote the exclusionary rule's "sole purpose" of "deter[ring] misconduct by law enforcement." *Davis v. United States*, 564 U.S. 229, 246 (2011); Gov't Br. 1–2, 20. Rather, suppressing the firearm because of a potential deficiency by the Government's lawyer deters no misconduct by any party. And considering the District Court's erroneous waiver determination, nor does upholding suppression encourage district courts to apply the correct law.

7

Nevertheless, the majority still believes suppression is appropriate, even if Officer Gambino's conduct was constitutionally sound. It finds support for suppression in the party presentation principle. To the majority's credit, it is true that the party presentation principle is a foundational component of our adversarial system. But it is also true that "the public legitimacy of our justice system relies on procedures that are neutral, accurate, consistent, trustworthy, and fair, and that provide opportunities for error correction." *Rosales-Mireles*, 138 S. Ct. at 1908 (internal quotation marks omitted). Furthermore, this is wholly unlike the party presentation principle issue identified by the majority in *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579–80 (2020). There, the Ninth Circuit invented new arguments of its own, invited supplemental briefing on those arguments from *amici*, and restructured the oral argument and its decision based on those, not the plaintiff's arguments. *Id.* at 1580–81. Here, the District Court identified the argument in question, and the Government committed to that argument at the suppression hearing, if not in its briefing. The case has come to us, and we may decide based solely on questions presented by the parties with no third-party briefing. The preservation of the public legitimacy of our institution is paramount. Thus, even if the Government had forfeited its *Wilson*-extension argument prior to the suppression hearing, we must hold the principles of accuracy and error correction outweigh the party presentation principle to the limited extent it is implicated. Contrary to the majority opinion, reversing the District Court would not be a categorical excuse of forfeiture. We would simply do what the District Court correctly identified as correct, but what it refused to do based on an erroneous understanding of the law.

## II

For the above reasons, I respectfully dissent. I would

8

either remand with instructions to apply the current version of Rule 12(c) of the Federal Rules of Criminal Procedure or reverse the order of the District Court.