# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2024

Lyle W. Cayce
Clerk

No. 23-40356

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

WESLEY PERKINS,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CR-189-1

_____

Before HAYNES, WILLETT, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

Wesley Perkins was charged with possession with intent to distribute methamphetamine. After the district court denied his motion to suppress contraband found during a search of his car, Perkins pleaded guilty and was sentenced. He now appeals the district court's denial of his suppression motion. We affirm.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-40356

I.

On February 22, 2022, National Park Service Ranger Chris Calkins initiated a traffic stop of Perkins's car as he was travelling in Padre Island National Seashore. The basis for the stop was a tag violation, as Perkins's car had a 72-hour temporary tag that was not valid until February 24.

As Calkins approached the car, he observed Perkins leaning down to grab or shove something under his seat. He ordered Perkins to show his hands and asked for identification. Perkins showed his empty hands but did not have a driver's license, so he told Calkins his name and date of birth. Calkins called for backup and went to his vehicle to run Perkins's information.

A second Park Service ranger, Travis Jones, arrived and came to the front passenger window to watch Perkins while Calkins ran his information. Jones observed that Perkins appeared to be fumbling nervously with his keys. Jones also noticed that the front passenger window was made of tape, making it difficult for him to see into the car and impossible for the window to roll down. Accordingly, Jones opened the front passenger door and asked Perkins to give him the keys, which Jones then placed on top of the car. As Jones spoke with Perkins, he noticed an empty, capped syringe in the side compartment of the passenger door. When Calkins returned to the car, Jones told him about the syringe. Looking at the door compartment, Calkins saw the syringe, as well as "little buds of marijuana" or "marijuana shake." Calkins then told Perkins that he had probable cause to search the car and ordered him out of it. Once Perkins was out, Calkins decided to run his K-9 unit around the outside of the car to see if she alerted. The dog did not alert, and the rangers searched the car. During the search, the rangers found more marijuana shake throughout the car and a bag under the driver's seat. The bag contained methamphetamine, drug paraphernalia, and a scale. The rangers arrested Perkins.

No. 23-40356

A grand jury indicted Perkins on one count of possession with intent to distribute more than five grams of methamphetamine. 21 U.S.C. § 841(a)(1) & (b)(1)(B)(vii). Perkins moved to suppress the evidence gathered by the rangers during their search. The district court held a suppression hearing where both of the rangers testified. Ultimately, the district court denied Perkins's motion, reasoning that the rangers had probable cause to search his car. Perkins entered a conditional plea agreement, which expressly reserved his right to appeal the unfavorable suppression ruling. The district court sentenced him to 84 months in prison and 48 months of supervised release. Perkins timely appealed.

## II.

### A.

In reviewing a district court's ruling on a motion to suppress, "we review factual findings for clear error and conclusions of law de novo." *United States v. Kendrick*, 980 F.3d 432, 439 (5th Cir. 2020). Whether the facts support probable cause is reviewed de novo, but we defer to the district court on the finding of said facts absent clear error. *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc) (per curiam). Nevertheless, our review is "particularly deferential" where, as here, the district court bases its decision on live oral testimony. *United States v. Lim*, 897 F.3d 673, 685 (5th Cir. 2018). "The evidence is viewed in the light most favorable to the party who prevailed in the district court," *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012), and the denial of a suppression motion will be affirmed "if there is any reasonable view of the evidence to support [it]." *United States v. Gratkowski*, 964 F.3d 307, 310 (5th Cir. 2020) (quotation omitted).

### B.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures. . . ." U.S. CONST. amend. IV. Generally speaking, the Fourth Amendment "requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam). But the automobile exception allows the police to search a vehicle without a warrant, so long as there is probable cause to believe that the vehicle contains contraband or evidence of a crime. *See California v. Acevedo*, 500 U.S. 565, 569–72 (1991); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).

Probable cause exists when, based on the "facts and circumstances within the . . . officer's personal knowledge," *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (quotation and citation omitted), "there is a fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The probable cause analysis incorporates the relevant officer's training and experience. *See United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016).

When an officer has probable cause to conduct a search, he can search parts of the vehicle that may conceal the object of the search. *See Acevedo*, 500 U.S. at 570–72. And the plain-view doctrine allows an officer to seize an item during a search if: "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the items was immediately apparent; and (4) the police had a lawful right to access the item." *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (quotation and citation omitted).

The rangers lawfully searched Perkins's car and seized the bag containing methamphetamine, drug paraphernalia, and a scale. It is undisputed that Calkins had grounds to initiate a traffic stop based on Perkins's tag violation. During that lawful traffic stop, Calkins saw marijuana in the door compartment of Perkins's vehicle. Based on his experience and

training, *cf. Turner*, 839 F.3d at 433, Calkins immediately recognized the incriminating and illegal nature of the marijuana. Based on that observation alone, the rangers possessed knowledge evincing a "fair probability that contraband or evidence of a crime" would be found in Perkins's car, *see Gates*, 462 U.S. at 238, which created probable cause and justified the subsequent warrantless search of the car. *See Acevedo*, 500 U.S. at 569–72; *Labron*, 518 U.S. at 940. During that lawful search, the rangers found the bag containing contraband under the driver's seat. Then the plain-view doctrine allowed the rangers to seize that bag: the rangers lawfully searched under the driver's seat, the bag was in plain view under the seat, the incriminating nature of the item and its illicit contents was immediately apparent, and the rangers could lawfully access it. *See Rodriguez*, 601 F.3d at 407. Considering the deference that we must show to the district court, *see Gratkowski*, 964 F.3d at 310; *Lim*, 897 F.3d at 685, we conclude that the district court did not err in denying Perkins's motion to suppress.

## C.

Perkins raises several counterarguments. None is persuasive.

First, Perkins contends that the rangers improperly prolonged the traffic stop. As we have held, a traffic stop must be "temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion . . . emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). But Perkins presents no evidence that the rangers prolonged the stop to do anything more than obtain and run his information, a normal component of a traffic stop. *Cf. Rodriguez v. United States*, 575 U.S. 348, 355 (2015); Grey Brief at 1 ("It is unclear from the record how long the encounter lasted."). And Calkins only saw the marijuana in the front passenger door after he returned from checking Perkins's

information. At that point, the rangers had more than reasonable suspicion—they had probable cause to extend the stop.

Second, Perkins emphasizes that Calkins's K-9 unit did not alert on the outside of his vehicle and argues that this failure to alert dispelled the rangers' probable cause. But while we "may not disregard facts tending to dissipate probable cause," *Bailey*, 87 F.4th at 286 (citation omitted), a failure to alert is not dispositive, *see, e.g.*, *United States v. Villafranco-Elizondo*, 897 F.3d 635, 644–45 (5th Cir. 2018) (holding that a failure to alert "did not eliminate the officer's existing probable cause"). Here, the rangers had already developed probable cause through Calkins's visual inspection of the marijuana in Perkins's car. That the K-9 failed to alert did not dissipate this probable cause, especially when the dog was not trained to detect marijuana, it was likely a very windy day at the beach, and the dog did not perform a sniff of the car's interior. Under these circumstances, the rangers still possessed probable cause for their search.

Finally, Perkins claims that the relevant moment of Fourth Amendment analysis was not when the rangers searched his car, but when Jones opened the front passenger door. But such an argument fails. True, we have held that the Fourth Amendment is triggered when an officer opens a car door to visually search inside a vehicle. *See United States v. Hunt*, 253 F.3d 227, 231–32 (5th Cir. 2001). But we have also held that, pursuant to a valid traffic stop, an officer can open a car door to visually inspect an occupant without any additional suspicion. *See United States v. Meredith*, 480 F.3d 366, 369–71 (5th Cir. 2007); *see also id.* at 371 ("[O]pening the door and eyeing the occupant is not significantly more intrusive than peering through a window and observing items in plain view."). As Jones testified and the district court found credible, *Lim*, 897 F.3d at 685, the front passenger window was nontransparent and impossible to roll down. Thus, Jones opened the door not

to search the car, but to better see and interact with Perkins. Under *Meredith*, Jones's action did not trigger the Fourth Amendment.

AFFIRMED.