**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1155

_____

LEONOR BEATRIZ CASTILLO-IRAHETA; A. N. C.,

Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a
Decision of the Board of Immigrations Appeals
(A212-993-896 & A212-993-895)
Immigration Judge: John B. Carle

_____

Submitted Under Third Circuit LAR 34.1(a)
on November 3, 2023

Before: JORDAN, ROTH and AMBRO, Circuit Judges

(Opinion filed: February 5, 2024)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**AMBRO**, Circuit Judge

Petitioners Leonor Castillo-Iraheta and her daughter, a minor, seek review of the dismissal by the Board of Immigration Appeals ("BIA") of their appeal from the decision of an Immigration Judge ("IJ") denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny the petition for review.

**I.**

Castillo-Iraheta and her daughter are natives and citizens of El Salvador who entered the United States in May 2017. Because Castillo-Iraheta did not have valid travel documents at the time of the application for admission, the Department of Homeland Security began removal proceedings under 8 U.S.C. § 1182(a)(7)(A)(i)(I). She conceded removability and filed the applications already noted based on her membership in two particular social groups: "Women in El Salvador" and "Women in El Salvador who have had children with known gang members." App. 9-11.[1]

In written briefs and testimony before the IJ, Castillo-Iraheta described that, back in El Salvador, she was in a relationship and had two daughters with Gerson Javier Rodriguez Bermudez ("Rodriguez"). In 2014, Rodriguez received a call from an MS-13 gang member demanding that he transport drugs for the gang. When he refused, the

---

[1] Before the IJ, Castillo-Iraheta described her second proposed group as "Women in El Salvador who have had children with or by known gang members." Agency Record ("A.R.") 133-34. Before us, Castillo-Iraheta omits the term "known" from her second proposed group because it is "repetitive and unnecessary." *See* Pet'r Br. 1, 9. For purposes of our review, we refer to the proposed group in the same manner as the IJ and BIA.

caller threatened to kill his family. Following the phone call, Castillo-Iraheta and her daughters moved to a town thirty minutes away, and her relationship with Rodriguez ended soon after. In 2015, she learned that Rodriguez, who turned out to be a member of a different gang, was killed by police. She never suspected his gang membership.

After Rodriguez's death, Castillo-Iraheta lived peacefully in her town for two years. In April 2017, a stranger approached her at a doctor's office, asking if she was Rodriguez's wife and ordering her to "never come around the area again," or else she would be killed. App. 3. The man did not identify himself as a gang member, and Castillo-Iraheta testified he looked "normal" and did not have any visible gang tattoos. *Id.* Fearing for her safety, she and her older daughter left El Salvador and entered the United States in May 2017. Her younger daughter stayed in El Salvador with Castillo-Iraheta's mother, where they still reside and have experienced no threats or violence. Castillo-Iraheta testified that, although she was never harmed while living in El Salvador, she believes she and her daughter will be raped and killed by MS-13 if they return. She also fears gang violence generally.

In January 2021, the IJ found Castillo-Iraheta removable and denied her requested relief, concluding that she had not suffered past persecution and did not have a well-founded fear of future persecution on account of her membership in a particular social group. *See* App. 1-16. The IJ reasoned that: (1) the isolated threats did not rise to the level of past persecution—Castillo-Iraheta safely relocated following MS-13's threat to her former partner, and she was not physically harmed or contacted again by the stranger at the doctor's office; (2) her proposed particular social groups were not cognizable; and

3

(3) even if they were, she failed to establish a nexus between her membership in those groups and the harm she feared. As for nexus, he found no evidence that anyone ever targeted Castillo-Iraheta on account of her nationality or gender and observed that "gangs target people in El Salvador regardless of gender, age or family ties." App. 12. Her former partner's death "may have been rooted in his failure to comply with the demands of the gang or his changing loyalties to another gang," and that "animus … now extended to her and her daughter." *Id.* The threat she received in 2017, the IJ concluded, thus "was rooted in vendetta, revenge and/or criminality" and not based on Castillo-Iraheta's status as a Salvadoran woman. *Id.* Having concluded that she failed to satisfy the requirements for asylum, the IJ determined Castillo-Iraheta necessarily could not meet the higher burden of proving entitlement to withholding of removal. He also denied her CAT protection because she had not shown a likelihood of future torture by or with the acquiescence of a Salvadoran government official.

The BIA affirmed the IJ's decision. It agreed that the "unfulfilled threats" Castilla-Iraheta experienced—once indirectly through her former partner and once directly by a stranger—were neither "highly … menacing [in] nature" nor "sufficiently imminent or concrete." App. 19. The BIA also agreed that her proposed particular social groups failed to meet the requirements of particularity and social distinction. It also found no clear error in the IJ's finding that Castillo-Iraheta did not demonstrate she was targeted because of her membership in her proposed social groups "rather than due to some form of animus [the individuals] had against her former partner." App. 21. It thus upheld the IJ's denial of Castillo-Iraheta's application for asylum and withholding of

4

removal. As for her application for relief under CAT, it affirmed the IJ's determination that she was not likely to be subject to torture upon removal, "particularly because she has not shown that any gang members would be aware of her return to El Salvador, locate her, and target her for harm rising to the level of torture." App. 21. She timely petitioned for review.

## II.[2]

Castillo-Iraheta challenges the BIA's decision that she is ineligible for asylum or withholding of removal based on her membership in two proposed social groups. She also quibbles with the BIA's denial of her application for relief under CAT.[3] We address each in turn.

---

[2] The BIA had jurisdiction under 8 C.F.R § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1). "Although our jurisdiction only extends to final orders of removal and thus only to decisions of the BIA, we also review the IJ's decision to the extent it is adopted, affirmed, or substantially relied upon by the BIA." *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020). We review the agency's factual findings for substantial evidence and its legal determinations *de novo*. *See Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020). Under the substantial evidence standard, we must "uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." *Sesay v. Att'y Gen.*, 787 F.3d 215, 220 (3d Cir. 2015).

[3] The Government claims Castillo-Iraheta "waived all of the dispositive and salient issues" by failing to "substantively rais[e]" that (1) she experienced past persecution, (2) a nexus exists between her feared future persecution and her membership in her proposed particular social groups, and (3) she is eligible for CAT protection. Gov't Br. 12. We disagree with that characterization. As an initial matter, nothing in her opening brief suggests she intentionally relinquished these issues in her petition for review. *See United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (cleaned up) ("Waiver is the intentional relinquishment or abandonment of a known right" whereas "forfeiture is the failure to make the timely assertion of a right," a distinction that "can carry great significance"). In this context, we fail to see how Castillo-Iraheta forfeited the nexus issue, as her opening brief addresses it. *See* Pet'r Br. 7-8. She also mentions past persecution and CAT eligibility. *See* Pet'r Br. v, xi, 7-9; *United States v. Brow*, 62 F.4th

A. <u>Asylum and Withholding of Removal</u>

To establish eligibility for asylum, Castillo-Iraheta must show a reasonable likelihood that she has been persecuted—or has a well-founded fear of persecution if returned to El Salvador—based on her membership in a particular social group. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i); *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543-44 (3d Cir. 2018). The standard for withholding of removal is higher still, requiring her to demonstrate a "clear probability" that she will suffer persecution on account of a protected ground. *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020). Persecution is generally understood to encompass only severe harms, such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). "A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution." *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021). Without that presumption, Castillo-Iraheta must demonstrate both a subjective fear of persecution and an objectively reasonable possibility of future persecution. *See S.E.R.L.*, 894 F.3d at 544.

Though Castillo-Iraheta primarily challenges the BIA's rejection of her proposed social groups, we first dispense with her argument—to the extent that she advances it— that the IJ and BIA erred in determining that the two threats she experienced do not establish that she was persecuted in the past. *See* Pet'r Br. 8. The BIA's conclusion is supported by substantial evidence. Castillo-Iraheta did not personally experience bodily

---

114, 119 n.4 (3d Cir. 2023) ("[W]e may … 'affirm on any ground supported by the record as long as the appellee did not *waive*—as opposed to *forfeit*—the issue.'").

harm or lose her freedom in the two incidents to which she testified. Even though unfulfilled threats can constitute persecution if they pose a "severe affront to [her] life or freedom" that is "concrete and menacing," *see Blanco*, 967 F.3d at 313, we agree with the BIA's determination that the oral threats Castillo-Iraheta experienced, while unsettling, are not at that level. After the initial threat against her partner, she moved to a new town where she lived peacefully and without incident for more than two years. Her mother and younger daughter still reside in El Salvador and have encountered no problems. And the individual who threatened Castillo-Iraheta never approached or threatened her again. With this backdrop, there is no presumption of future persecution.

We also agree with the BIA's determination that Castillo-Iraheta failed to establish that she will be targeted on account of her membership in a cognizable "particular social group." A group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L.*, 894 F.3d at 540.

To satisfy the particularity requirement, the group must have "discrete and … definable boundaries that are not amorphous, overbroad, diffuse, or subjective." *Id.* at 548 (internal quotation marks omitted). Substantial evidence supports the BIA's determination that "women in El Salvador" lacks particularity. A group comprised of "all women in a particular country" is "overbroad[] because no factfinder could reasonably conclude that all [of a country's] women had a well-founded fear of persecution based solely on their gender." *See Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 146 (3d Cir. 2021) ("Guatemalan women" not sufficiently particularized).

7

Substantial evidence likewise supports the BIA's conclusion that "women in El Salvador who have had children with known gang members" lacks particularity and "definable boundaries" to be socially distinct. App. 20. The IJ determined, and we agree, that it is unclear whether the proposed group "would include women who are currently involved in a relationship with a known gang member, women who recently ended their relationship, women who ended their relationship years ago and/or women who were only casually involved with the alleged gang member" and that it "would also include women who conceived their child in an act of sexual violence." App. 11. Castillo-Iraheta makes no attempt to define this group more precisely in her petition for review. The IJ also noted the lack of evidence in the record establishing that members of her proposed group would be perceived, considered, or recognized in El Salvador as a distinct group. Again, Castillo-Iraheta fails to direct us to anything in the record to challenge that conclusion.

Even assuming Castillo-Iraheta belongs to a cognizable social group, we agree that she failed to demonstrate the requisite link between that group and her feared harm. The IJ found no "persuasive evidence" to support the notion that she was targeted because she had a child with her former partner or that the stranger cared that he was a former gang member, let alone that she was targeted because she was a woman in El Salvador. App. 12. Instead, the IJ determined the threats were "rooted in animosity" or "vendetta" against her former partner and rightly concluded that those acts do not establish a claim for asylum. *Id.*; *see Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 685 (3d Cir. 2015)

("[c]onflicts of a personal nature," like isolated criminal acts, are not persecution on account of a protected characteristic).

Castillo-Iraheta's sole response is her conclusory statement that she and her daughter "were threate[ne]d with death because of the fact that they were women, and also women associated with a gang member," which, she contends, was "not a personal vendetta but a recognition that their membership in the enunciated groups made them vulnerable to persecutors who could not be reigned [sic] in by the government or authorities." Pet'r Br. 8. But she presents no *evidence* to establish that her allegedly protected grounds are a "central reason" for the mistreatment she experienced, or fears, in El Salvador. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i); 1252(b)(4)(B); *Gonzalez-Posadas*, 781 F.3d at 685 (relief "may not be granted when the characteristic at issue 'played only an incidental, tangential, or superficial role in persecution'"). In fact, Castillo-Iraheta testified she "ha[d] not the faintest idea why" the stranger at the doctor's office threatened her. A.R. 131. And we agree with the BIA that the generalized evidence of violence against women in El Salvador does not speak to the motivations of the two men who threatened her and does not atone for her failure to establish the requisite nexus. *See Elsayed v. Att'y Gen.*, 366 F. App'x 340, 342 (3d Cir. Feb. 17, 2010) (citing *Vente v. Gonzales*, 415 F.3d 296, 301 (3d Cir. 2005)) ("[G]eneralized violence does not excuse the petitioner from demonstrating a nexus between the persecutory acts and a protected category.").

In sum, there is no compelling reason to reverse the BIA's determination that Castillo-Iraheta failed to demonstrate that she was, or will be, singled out on the basis of

her membership in a particular social group.  Her failure to establish eligibility for asylum necessarily precludes her from meeting the more stringent standard for withholding of removal.  *See Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 484 (3d Cir. 2022).

B.  CAT Relief

To qualify for relief under the Convention Against Torture, Castillo-Iraheta needed to prove that, if she were removed to El Salvador, she would "more likely than not" be tortured "by, or at the instigation of, or with the consent or acquiescence" of public officials.  8 C.F.R. §§ 1208.16(c)(2); 1208.18(a)(1); *Blanco*, 967 F.3d at 315.  "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman, or degrading treatment or punishment."  8 C.F.R § 1208.18(a)(2).  To determine whether a petitioner is likely to be tortured, the BIA considers "all evidence relevant to the possibility of future torture," including evidence of "past torture" and "gross, flagrant or mass violations of human rights within the country of removal."  *Id.*  § 1208.16(c)(3).

Substantial evidence supports the determination that Castillo-Iraheta failed to demonstrate a likelihood of future torture.  The IJ reasonably concluded that she did not suffer torture in the past.  Because the threats she experienced do not rise to the level of persecution, they necessarily do not meet the more stringent standard for torture.  We likewise agree with the IJ and BIA that she has provided no evidence tending to show a future likelihood that she will suffer such treatment.  The BIA thus properly denied her application for relief under CAT.

\* \* \* \* \*

Castillo-Iraheta is ineligible for asylum or withholding relief because she has not shown past persecution or a well-founded fear of future persecution based on her membership in a cognizable particular social group. She also is ineligible for CAT relief because she has not proven that she likely would be tortured when she returns to El Salvador. We thus deny her petition for review.